GEORGE W. TODD *vs.* EVERY EVENING PRINTING COMPANY, a
corporation of the State of Delaware.

*Libel—Action for Damages—Newspaper Publication; Claimed to*
*be Privileged—Judicial Proceeding—Preliminary and Ex*
*Parte Proceeding—What Words are Libellous per se*
*—Damages Implied by Law—Special Damages—Ex-*
*emplary Damages, when Awarded—Express Mal-*
*ice; How Proved—What may be Consid-*
*ered in Mitigation of Damages—Mo-*
*tion to set aside Verdict*
*—Amount Reduced.*

1. However much publicity may have attended the proceedings,
the publication of which by the defendant constitutes the basis of the
present action, they were from their inception to the execution and de-
livery of the bail bond wholly preliminary and *ex parte*, and afforded
no opportunity to the defendant, who is the plaintiff in this suit, to be
heard in his defense to the charge contained in the affidavit. It must be
held both upon authority and sound public policy that the doctrine of
privilege cannot be extended to the publication of such proceedings.

2. Words which represent a person as dishonest or dishonorable,
and guilty of such disgraceful conduct as would bring him into public
contempt, are libellous, and actionable *per se*. When such words are
published the law presumes malice, and that the person to whom they
refer has sustained damage from the publication of the libellous matter.
It is not necessary to a recovery by the plaintiff that he should prove
any special damages, or any actual intent or desire on the part of the
defendant to injure the plaintiff by the publication.

3. Exemplary damages are given only where express malice is
proved. Such malice exists where, in addition to the publication of the
libellous article, it is shown that the publication was made wantonly,
maliciously, and with intent to injure, degrade or destroy one's reputa-
tion. Express malice is never presumed, but must be proved. In deter-
mining whether there was express malice the jury may consider all the
circumstances surrounding the publication, as disclosed by the evidence,
which tend to show the motive or spirit which actuated the publication,
including any information or knowledge which the defendant possessed
or had the means at hand of obtaining, touching the truth or falsity of
the charges made.

4. Even though the publication complained of is libellous, and un-
justifiable in law, the jury may take into consideration, in mitigation of
damages, any and all facts and circumstances disclosed by the evidence,
which tend to show that the article was published with a proper motive,
and without intent or desire to injure the plaintiff.

5.  A motion being made to set aside the verdict on the ground that it is excessive, the amount thereof was reduced by agreement of the plaintiff.

*(March* 20, 1907.)

LORE, C. J., and PENNEWILL, J., sitting.

*Anthony Higgins* and *Horace G. Eastburn* for plaintiff.

*Thomas F. Bayard* for defendant.

Superior Court, New Castle County, February Term, 1907.

ACTION FOR DAMAGES (No. 149, September Term, 1905) sustained by the plaintiff through the alleged publication by the defendant of a libel upon the plaintiff.

See facts in charge of Court.

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—This is an action brought by George W. Todd against the Every Evening Printing Company, a corporation of this State, for the recovery of damages sustained by the plaintiff through the alleged publication by the defendant of a libel upon him.

It is true as stated by the plaintiff in his prayers that the owner or publisher of a public newspaper has no more right to print libellous matter than anyone else.

In order, however, to find a verdict for the plaintiff in a case of this kind you must be satisfied that the elements necessary to warrant such a finding have been established by a preponderance of the evidence adduced in the case.

In cases of this character one of the elements necessary to be established is that the defendant published the newspaper article complained of as being libellous.· The publication of such article in this case is not denied.  Indeed it is admitted.

Another element of the charge against the defendant which the plaintiff must have established by the evidence is that the article or publication complained of contained a libel upon the plaintiff.  This question however must be determined by the Court in accordance with the law applicable thereto.

It has been declared by this Court, in the case of *Rice vs. Simmons,* 2 *Harr.,* 429, that to be actionable the writing com-

plained of must impute something which tends to disgrace a a man, lower him in, or exclude him from society, or bring him into contempt or ridicule. It is not intended by this, the Court said, that to make a publication libellous it must contain a direct and open charge. The publication must be judged by its general tenor; and if, taking the terms in their ordinary acceptation, it conveys a degrading imputation, however indirectly, it is a libel.

If the article complained of represents the defendant as a dishonest or dishonorable man it would be a libel under the law as laid down by the Court in the case of *Rice vs. Simmons.*

The publication upon which this action is based is in the following language:

"Case against G. W. Todd. On capias issued to Counsel for Mary G. Todd Estate. An alleged claim of $3,000. And a charge of transferring his property. Philip Q. Churchman, counsel for the Todd estate, who had the capias issued, fixed the bail at $6,000. Action taken under a recent statute.

"George W. Todd, who for many years has been prominently identified with the iron and steel industry in this city, was summoned, late yesterday, by Deputy Sheriff Cox, on a capias sworn out by Philip Q. Churchman, counsel for the Mary G. Todd estate. Mr. Todd was taken to the sheriff's office at the county Court House, and was accompanied by Anthony Higgins, his counsel, Mr. Churchman fixed the bail at $6,000.

"According to the allegations of Mr. Churchman, Mr. Todd owes the Mary G. Todd estate $3,000 and had given his note in payment of it. The note is about to come due and Mr. Churchman alleges that Mr. Todd has transferred four of his properties, and that the transfers were made for the purpose of evading payment of the note. Action was taken under a recent statute relating to such cases.

"It was some time before Mr. Todd could obtain a bondsman. City Councilman Howard D. Ross, his son-in-law, offered to become his bondsman, but Philip Q. Churchman, counsel for the heirs, refused to accept Mr. Ross. It was about 5 o'clock when Mr. Todd secured a bondsman and was released.

"The capias on which Mr. Todd was taken was issued by Superior Court, yesterday, and grew out of an action brought by Winfield S. and William M. Palmer, heirs of Mary G. Todd, against George W. Todd, trading as George W. Todd & Co. The suit was entered against Mr. Todd at the May term, to recover a note of $3,000 alleged to be due the Palmers from Mr. Todd, with interest due for more than a year.

"On Thursday in the office of Recorder of Deeds Billany, the conveyances were presented for record of the property of No. 1311 King Street in fee from Mr. Todd to Thomas Lawrence Husbands; the property No. 214 Tatnall Street in fee simple from Mr. Todd to Jacob Hadley Lewis; a property on the east side of West Street, 62 feet south of Eleventh Street to Mrs. Minshall Hinkson of Brandywine Hundred; and a mortgage for $2,000 on the property of Mr. Todd, at No. 1006 West Street, to Thomas Lawrence Husbands. All of these were dated May 13th, 1904, although the affidavit of the Palmers alleges that the conveyances are ante-dated to that time.

"The action was taken upon the representations made by the Palmers in an affidavit which in part is as follows:

" 'That the said defendant, George W. Todd, together with one Harriet J. Todd, his wife, made and executed a certain indenture under their hands and seals wrongfully and fraudulently ante-dating the same the 13th day of May, A. D. 1904, as the said plaintiffs verily believe, and therein and thereby granted and conveyed in fee simple unto one Thomas Lawrence Husbands, a relative of the said defendant George W. Todd, a certain lot or parcel of land in the City of Wilmington, New Castle County and State of Delaware, owned by the said defendant George W. Todd, and known as No. 1311 King Street in said city, which said indenture was received for record in the office of the Recorder of Deeds, in and for New Castle County, at Wilmington, on the thirteenth day of July, A. D. 1905.'

"The form of the remaining allegations is the same. One describes Jacob Hadley Lewis as a 'life-long friend of the said defendant.' In conclusion the affidavit reads:

" 'That the said plaintiffs brought an action in the Superior Court of the State of Delaware, in and for New Castle County to the May Term, of said Court against the said defendant and would have obtained judgment thereon at the adjournment of the said Court for upwards of $3,000 which said judgment would have been a lien on the lands so conveyed by the said Todd as aforesaid and the said money could have been made but for the said conveyances.'

"It is signed by Winfield Palmer and William M. Palmer and is sworn to before Harry P. Joslyn, notary public.

"Mr. Higgins, counsel for Mr. Todd, stated this morning that the property transfers were made in 1904, although they were only recently recorded."

Some of the prayers of the defendant are based upon the assumption that the alleged libellous publication was privileged under the law. We cannot, however, charge you in accordance with such prayer because it has been held by this Court in a demurrer filed in this case that such publication was not privileged. The Court in their opinion said: "Counsel for the plaintiff claimed, however, that the filing of the affidavit with the Prothonotary for the purpose of obtaining the writ, the issuance of the writ by the Prothonotary, the subsequent arrest of the plaintiff by the sheriff, and the execution and delivery of the bail bond by the plaintiff to the sheriff did not constitute such a judicial proceeding as would warrant a report of the same under the protection of privilege, and that the publication of the contents of the affidavit which included actionable allegations was not privileged. We are, therefore, called upon to determine whether privilege extends to a report of a preliminary, *ex parte* proceeding, such as is disclosed by this case."

"We fail to see, after this discussion, how we can maintain the position contended for by the learned counsel for the defendant. However much publicity may have attended the proceedings, in the former suit against the plaintiff in this action, at the time of the filing of the affidavit and the issuance of the writ, or at the time of the arrest and holding to bail by the

sheriff, such proceedings were from their inception to the execution and delivery of the bail bond, wholly preliminary and *ex parte*, and afforded no opportunity to the plaintiff here to be heard in his defense to the charge contained in the affidavit. And after a careful consideration of this case we are constrained to hold that both upon authority and sound public policy the doctrine of privilege cannot be extended to the publication complained of in the declaration."

We think the language of this article represents the defendant as a dishonest or dishonorable man, guilty of such disgraceful conduct as would bring him into public contempt; and say to you, therefore, that under the law of this State the said publication was a libel upon the plaintiff, and actionable *per se*.

In such case the law presumes malice, and that the plaintiff has sustained damage from the publication of the libellous matter. The amount of such damage, however, is for the jury to determine.

It is not necessary to a recovery by the plaintiff that he should have proved special damage, if he has suffered an actionable wrong at the hands of the defendant; nor is it necessary that the plaintiff should have shown any actual intent or desire on the part of the defendant to injure the plaintiff by the publication in question. In other words, where the article complained of is a libel, and actionable *per se*, and there is no proof of express malice on the defendant's part, the jury may render a verdict in favor of the plaintiff even though he has not proved any special damage.

If the jury find that the plaintiff has established express malice, then they may award such exemplary or punitive damages as they think proper under the evidence, in addition to such damages as would compensate the plaintiff for the injury which he has sustained.

Exemplary damages are given only where express malice is proved. Such malice exists when, in addition to the publication of the libellous article, it is shown to the satisfaction of the jury that the publication was made wantonly, maliciously, and with intent to injure, degrade or destroy one's reputation.

In such case exemplary, vindictive or punitive damages may be awarded by way of punishment in addition to compensatory damages.

Express malice is never presumed, but must be proved by the plaintiff. It may however be proved by direct or indirect evidence. In determining whether there was express malice in this case you should consider all the facts and circumstances disclosed by the evidence. You may therefore consider all the circumstances surrounding the publication of the article in question as disclosed by the evidence, which tend to show the motive or spirit which actuated the publication, including any information or knowledge which the defendant possessed, or had the means at hand of obtaining, touching the truth or falsity of the charges made.

Having decided that the publication complained of was not privileged, but was a libel and actionable *per se*, we are bound to say to you that the plaintiff is entitled at your hands to a verdict for some amount.

If you should not be satisfied by a preponderance of the evidence that express malice has been shown you cannot in your verdict include any sum for exemplary, punitive or vindictive damages; and in such case, should you find a verdict for the plaintiff, it must be restricted to such damages as will compensate the plaintiff for the wrong done him, without respect to any question of punishment. The amount to be awarded to the plaintiff should be such as would reasonably compensate him for any wrong done to his reputation, good name or fame, and for any mental suffering caused thereby as shown by the evidence.

We will say to you that even though the article complained of is libellous, and unjustifiable in law, you may in reaching your verdict take into consideration, in mitigation or reduction of damages, any and all facts and circumstances disclosed by the evidence which tend to show that the article was published with a proper motive, and not with any intent or desire to injure the plaintiff.

And we further say, as requested by the defendant, that an inuendo does not enlarge the sense of the words used in the publication, and that the jurors should therefore be neither guided nor biased by the inuendo used in the amended declaration of the plaintiff, but must take the law in regard to the interpretation of the words of the publication as laid down by the Court.'

Verdict for plaintiff for $4,000.

'Counsel for defendant thereupon moved for a new trial on the ground that the amount of the verdict was excessive. After the motion was argued by the respective counsel, plaintiff's counsel agreed to a reduction of the verdict to $3,000 and thereupon counsel for defendant withdrew his motion for a new trial.'