HENRY E. SNAVELY *v.* NEWLIN T. BOOTH, JAMES T. ELIASON, JR., HORACE L. DEAKYNE and THE NEWS-JOURNAL COMPANY, a corporation of the State of Delaware.

(JANUARY 7, 1935.)

LAYTON, C. J., and HARRINGTON, J., sitting.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for plaintiff.

*P. Warren Green,* Attorney-General, and *Clarence A. Southerland* for defendants, Booth, Eliason, Jr., and Deakyne.

*Aaron Finger* (of Richards, Layton and Finger) for The News-Journal Company.

Superior Court for New Castle County, No. 70, September Term, 1934.

LAYTON, C. J., delivering the opinion of the Court:

The tort complained of is the publication of the letter which is supposed to contain matter defamatory of the plaintiff in his profession as an educator. The sufficiency of the cause of action is attacked by demurrer.

The declaration discloses that, at the time of the publication, the plaintiff was superintendent of the public schools of a special school district, which position he had held for some years. The individual defendants were three of the four members of the board of education of the district. A number of cases of pregnancy in the student body were discovered, and the board determined to inaugurate a course in social hygiene, to be conducted by one having special training. The plaintiff expressed certain opinions with respect to the proposed course, as a result of which the board determined not to renew his contract as superintendent. At a meeting of citizens of the school district a resolution was adopted requesting the board to retain the plaintiff in his position, upon receipt of which, to explain its position, the board, acting by the three individual defendants, authorized the writing and publication of the letter which is the basis of this action.

Interesting and important questions are presented, but manifestly, if, as is contended by the defendants, the letter

is not libelous, or not libelous *per se,* without proper averment of special damage, it need not be determined whether the action is one against the state, nor whether the defendants come within the protection of the rule of privilege, absolute or conditional.

■ Upon demurrer it is the province of the court to determine whether the words charged in the declaration amount to libel or slander. *Lewis v. Daily News Co.,* 81 *Md.* 466, 32 *A.* 246, 29 *L. R. A.* 59; *McDonald v. Lee,* 246 *Pa.* 253, 92 *A.* 135, *L. R. A.* 1916*B,* 915; *Diener v. Star, etc., Pub. Co.,* 230 *Mo.* 613, 132 *S. W.* 1143, 33 *L. R. A.* (*N. S.*) 216; *Id.,* 232 *Mo.* 416, 135 *S. W.* 6; *Woodruff v. Bradstreet Co.,* 116 *N. Y.* 217, 22 *N. E.* 354, 5 *L. R. A.* 555; *Walker v. Tribune Co.* (*C. C.*), 29 *F.* 827; *Newell Sl. & Lib.* (*4th Ed.*) 295; 17 *R. C. L.* 287; 37 *C. J.* 101, *et seq.*

The plaintiff denies the truth of certain of the statements contained in the letter which, he says, falsely and maliciously, charge him with lack of professional and moral aptitude, capacity, ability, conduct and influence, and he alleges that he has been injured and damaged in his professional reputation as an educator; that he is barred and precluded from professional association and contact with public and private educational bodies and with public educators; that he has lost his position as superintendent of the public schools of the special school district, the board of education refusing to renew his contract; and that he has been prevented from obtaining similar employment elsewhere.

From the plaintiff's brief, and from the oral argument, it is evident that the plaintiff, in the main, rests his right of action upon those statements relating to the teaching of the best methods of contraception as a part of a proposed course in what was called social hygiene.

In the declaration the falsity of the statement is alleged as follows:

That, "he, the said plaintiff, did not detail as one of his views as a part of the course to be taught in said schools the teaching of birth control to its extreme limit, that he did not advocate teaching to secondary school children the best methods of contraception, but on the contrary, merely submitted as a part of the outline above mentioned to be used by the board as a foundation from which the subject should be approached, the presentation to older secondary school children the best methods of contraception, that he did not plainly or otherwise advocate the teaching of sex matters largely or otherwise from the viewpoint of protection from the results of immorality, that he did not minimize any teaching of morality itself, and that he did not at any time term morality tribal traditions."

It is noticed that the letter contains the statement,

"We are of the opinion that any teaching of morality or social hygiene must be founded on rectitude of conduct and purity of life and not solely approached as a scientific procedure as advocated by the Superintendent,"

to which the plaintiff takes no exception.

■ Further the statements are made,

"This attitude of mind is so fundamentally at variance with that of the Board that there is no common meeting ground,"

and,

"So fundamentally different are our views that we cannot agree that the children of our community should be subjected to the teachings or influence of one whose mental approach to the subject is as outlined by us."

The phrases, "attitude of mind" and "mental approach," mean nothing else than formed opinion or theory.

■ The plaintiff endeavors to establish falsity, from which defamation and damage flow, by drawing a distinction between the charge of advocacy of teaching to secondary school children generally, the best methods of contraception, and the presentation of those methods to older secondary school children, which is admitted by him in his declaration.

We must not allow ourselves to become lost in a philo-

logical fog. If, for the benefit of a plaintiff in a libel action, the rule is to be adhered to that language is to be construed in the sense in which mankind in general would naturally understand it, the same rule should operate in favor of a defendant where falsity of statement is involved. The nuances of expression and meaning suggested by the plaintiff would be lost upon one of average intelligent perception. Concede, that to teach, means to impart knowledge, and that "presentation" is merely a disclosure for approval or rejection, the sense and meaning are essentially the same. Knowledge and understanding are acquired in either way, and whether by all secondary school children, or by older secondary school children only, is of the least importance. They all are young, too young to be capable of the power justly to appreciate the teaching or presentation, and thereby to accept the truth and to reject the error. Furthermore, the knowledge and information acquired by older children, undoubtedly, will be disseminated throughout the school.

The teaching or presentation of the best methods of contraception is the teaching of birth control to its extreme limit. The best methods of contraception mean the safest and surest methods. Birth control is the popular name for the prevention of conception by chemical or mechanical means instead of by abstention from intercourse. The popular signification ascribed to contraceptive methods is some means or method to prevent pregnancy, and the ultimate result, birth. If the means are efficient, pregnancy is prevented, and birth rendered impossible. The object is attained. This is birth control to its extreme limit, unless we wander into the field of criminality.

It is, no doubt, true that, in the minds of many people, the idea of morality in general and specifically with respect to the use of contraceptives, is a mere conformity with conventional rules, entirely apart from the thought of

chastity and virtue inspired by religious and spiritual influences. Others, perhaps not entirely ignoring the spiritual aspect, find it not immoral, or a sufficient excuse for that which otherwise might be immoral, to make use of contraceptives where economic situations or conditions of health seem to demand their use. But, whether we accept the implacable judgment of a great Christian church, that it is a positive sin to exercise the act of generation and frustrate its natural purpose, or excuse the immorality in conditions of poverty or ill-health, or give no heed whatever to medical, sociological or theological views, certainly the writers of the letter were entitled to their view that it is a moral wrong to teach secondary school children, older or younger, the nature and methods of birth control, or that which is essentially the same thing, the best contraceptive methods. They were entitled to their opinion that morality is founded upon rectitude of conduct and purity of life.

A statute of this state, *Chapter* 182, § 2, *Vol.* 33, *Laws of Delaware,* as amended by 34 *Del. Laws, c.* 179, § 2, requires that at least five verses of the Holy Bible be read on every school day, and it may well be supposed that these defendants, being members of the board of education, conceived that one of the purposes of the statutory requirement is that morality be taught from the standpoint of Christianity, and that young children be imbued with that idea of chaste conduct which the Christian religion teaches, a religion which is part of our common law. *State v. Chandler,* 2 *Harr.* 563. From the viewpoint of the writers of the letter it would not be in conformity with the intention of the Legislature, nor would it meet with the approval of many parents, to permit the public schools to be made the breeding grounds for the propagation of ethical opinions cherished by the biologically minded.

The opinion expressed in the letter that the advocacy

of presentation of the best methods of contraception is the advocacy of teaching sexual morality largely from the viewpoint of protection from results of immorality, to the minimization of teaching morality itself was, from their conception of morality, entirely justified.

The declaration discloses an irreconcilable difference of opinion, apparently rooted in fundamental beliefs, between the board of education and the plaintiff with respect to the teaching of sexual morality. The controversy is a conflict of view, opinion, theory. The writers of the letter adhered firmly to the conception of morality as righteousness of life inspired by spiritual influences, to many, no doubt, in this hard, realistic age, an antiquated notion. The plaintiff's opinion was that the subject be approached in a practical way, that is, by imparting to older secondary school children systematic knowledge of the principles of the generative function and the best methods of defeating the natural results of the act of generation. The plaintiff's view was that of a latitudinarian. The defendants' was the parochial view.

The plaintiff, as an individual, or as an educator, is not attacked. His good qualities are distinctly recognized. His private life, his domestic concerns are not touched. No disgraceful act is imputed to him. He is not charged with personal delinquency or moral turpitude. As said by Grant, J., dissenting, in *Eikhoff v. Gilbert,* 124 *Mich.* 353, 83 *N. W.* 110, 115, 51 *L. R. A.* 451, "The statement that a man supports measures which may generally be conceded to be against the moral interests of the community is not charging him with immorality." The plaintiff is not accused of ignorance or professional incapacity. There is no opprobrious or vindictive language used. All that is assailed is his theory of the proper method of instructing the young in matters of sex about which, no doubt, a wide difference of opinion exists. 'It is one thing to indict the man, quite

another, to indict the opinion, and here the opinion is substantially admitted by the plaintiff in his declaration.

Defamation generally is understood as a false publication calculated to bring one into disrepute. 1 *Cooley, Torts* (3d *Ed.*) 366; *Newell, supra.* It includes the idea of calumny, aspersion by lying. *Diener v. Star, etc., Pub. Co.,* 232 *Mo.* 416, 135 *S. W.* 6. The foundation of the action is that damage has resulted from a wrong done to reputation. *Rice v. Simmons,* 2 *Harr.* 417; *Spence v. Johnson,* 142 *Ga.* 267, 82 *S. E.* 646, *Ann. Cas.* 1916A, 1195.

In an action for libel, as in any other action, the pleadings are to be construed most strongly against the pleader, as he must be supposed to have stated his case in the manner most favorable to himself, *Walsh v. Pulitzer Pub. Co.,* 250 *Mo.* 142, 157 *S. W.* 326, *Ann. Cas.* 1914C, 985, and the defendant may have the benefit of whatever may be stated in the complaint, *Henry v. Moberly,* 6 *Ind. App.* 490, 33 *N. E.* 981. A declaration may fail to disclose a cause of action either by alleging too much, or too little. Here by the declaration itself, a conflict of theory or opinion of teaching sexual morality is disclosed, with nothing prejudicial to the man himself except that which may arise from his opinions and theories.

We have been referred to no authority, nor have we been able, in an extended search, to find authority, holding that criticism of mere opinion or theory is actionable defamation. See *note* to *St. James Military Academy v. Gaiser,* 28 *L. R. A.* 675.

When a theory or doctrine or opinion on a moral, religious, scientific or political subject is commented upon, the test of its truth by decision of a jury is an absurdity. Such matters are for the public not for a jury to determine. Where language is truthfully stated, the criticism, if unjust, will not harm, for the former will counteract the effects of

the poison, and the public will determine whether the critic has libeled himself or the object of his criticism. Otherwise, court calendars will be crowded with defamation actions between modernist and fundamentalist, protectionist and freetrader, conservative and liberal, for the vindication of theories and opinions, and verdicts of juries will be arrived at from prejudice and not from fact.

The plaintiff relies also upon the statement in the letter charging him with having said that, "if any one peculiarly fitted to conduct a course in social hygiene, be employed, he the plaintiff, reserved the right to neutralize any statements appearing to him to be scientifically incorrect or socially unsound." There is no innuendo suggesting a hidden, sinister meaning to be attributed to these words, intended by the writers and so understood by the readers. In the plaintiff's brief of argument it is urged that the words charge him with egotism and bigotry, and as the letter expresses general disapproval of the plaintiff's attitude of mind on the subject, the false statement charges him as being unfit to pass upon the scientific correctness or social soundness of any course in social hygiene that might be inaugurated. Without pausing to consider to what extent a lack of innuendo, giving sting to otherwise harmless words, may be supplied by brief of counsel, or the rule that an innuendo cannot give a forced and unnatural meaning to language, it is sufficient to say that, at most, the statement is not libelous *per se*. Neither is the statement that he termed morality tribal traditions.

With respect to the charge that the plaintiff made unbridled and unlicensed statements, it may be said that, while this may be termed a vexatious or ill-natured statement, it is not libelous. *Rice v. Simmons, supra.*

The plaintiff counts upon the falsity of the statement attributed to him, that he suggested "drawing to his aid every organized body in the City, excepting, specifically,

every church." This, it is alleged, was intended to malign the plaintiff, and to bring him into public scandal, infamy and professional disrepute with the congregations of the churches of the school district.

It is not every false statement, whether oral or written, that is considered in law as a libel, whether concerning one personally or in a professional capacity, without allegation and proof of special damage. *Newell, supra,* 157; *Donaghue v. Gaffy,* 54 *Conn.* 257, 7 *A.* 552; *Urban v. Helmick,* 15 *Wash.* 155, 45 *P.* 747. Each case must be decided mainly on its own facts. *Odgers, Lib. & Sl.* (5th Ed.) 2. The same rules, in general, apply to parol as to written slander. *Newell, supra,* 40; 1 *Cooley,* 400.

The nature of the charge must be such that the court can legally presume that the person has been injured in his business or profession. As stated in *Newell, supra,* 170,

"When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will as its natural and proximate consequence occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action and *prima facie* constitutes a wrong without any allegation of evidence or damage other than that which is implied or presumed from the fact of publication; and this is all that is meant by the term, 'actionable *per se*' etc."

The words, to be actionable in themselves, must touch the plaintiff in his profession, must have been spoken or written of the party in relation thereto, and must be such as to impeach either his skill, or knowledge, or his professional conduct, or be such as would prejudice him in his profession. *Newell, supra,* 157; 17 *R. C. L.* 294; 36 *C. J.* 1180.

In *McLoughlin v. American Circular Loom Co.* (*C. C. A.*), 125 *F.* 203, 205, Judge Lowell well expresses the rule as to the necessity of alleging special damage. He says,

"The gravamen of an action for defamation is damage to the reputation of the plaintiff, naturally arising from a false report. * * * From some sorts of false report the law presumes conclusively that damage has followed, and the plaintiff need neither allege nor prove it. Here the language is styled libelous *per se*. * * * Except where this presumption exists, special damage to the plaintiff's reputation must be alleged and proved to have been the actual and natural result of the language used."

See, also, *Stone v. Cooper*, 2 *Denio* (*N. Y.*) 293; 1 *Cooley* 401, 402; 18 *A. & E.* (*2d Ed.*) 916.

Applying these principles to the language used, and considering that language in connection with the letter as a whole, and the facts stated in the declaration, we cannot presume conclusively that the plaintiff, by being charged as having excepted the churches from the organized bodies to be called on by him for assistance, was brought into professional disrepute with the churches, and, thereby, has suffered damage. Therefore, the allegations of special damage must be considered.

The claim of special damage is in two particulars. The first is that as a result of the publication "the said plaintiff has lost his position as Superintendent of the New Castle Special School District, and the Board of Education has refused and still refuses to renew his contract as such Superintendent, whereby the said plaintiff has lost and been deprived of the salary, etc."

It clearly appears from the letter, which is the basis of this action, that the Board of Education had determined, before the letter was written, not to renew the plaintiff's contract. The letter itself says,

"The meeting confined itself to a request that the Board reconsider its action and re-employ Mr. Snavely. * * *"

And, it concludes,

"From the foregoing recital of the reasons which prompted the Board in their action * * * it is apparent that we cannot comply with the resolution * * * and vote for the retention of Dr. Snavely."

This special damage consists in the refusal of the board to retain the plaintiff in his position, and as this had been decided upon, before the writing and publication of the letter, it is clearly not a damage actually and naturally resulting from the alleged defamatory publication.

██ ██ The second claim of special damage is that by reason of the defamatory letter, the plaintiff has been barred and prevented from obtaining similar employment elsewhere. It is not alleged that he has lost his license to teach, nor does the declaration set forth any specific instance of failure to obtain employment in a similar capacity elsewhere by reason of the publication. This is not a compliance with the plain rule of pleading in actions for defamation. Special damage must be alleged with such particularity as to inform precisely the defendant of the case he is called upon to meet. *Odgers, supra,* 627; *Newell, supra,* 841.

The authorities cited in support of the declaration are not particularly helpful, nor, are they opposed, we think, to our conclusions. In *McCormick v. Hawkins,* 169 *Mich.* 641, 135 *N. W.* 1066, 1067, it was published of the plaintiff that "his career in the town has been a disgrace to the school that he is supposed to honor by standing at its head."

Further, "he has been responsible for the loss to the school of several experienced and capable teachers, some of whom could more creditably and more worthily fill the position of superintendent."

Again, that he "is tricky and has to be forced to pay honest debts."

There also was an intimation that the plaintiff's example caused pupils to think of "dishonorable methods rather than the right."

In *Triggs v. Sun Printing, etc., Ass'n,* 179 *N. Y.* 144, 71 *N. E.* 739, 66 *L. R. A.* 612, 103 *Am. St. Rep.* 841, 1 *Ann. Cas.* 326, the publication was a deliberate ridicule of the

professional capacity of the plaintiff, composed of reckless and unfair attacks on him under a pretext of criticism.

In *Danville Democrat Pub. Co. v. McClure,* 86 *Ill. App.* 432, the charge was that the plaintiff, as president of an institution of learning, had been guilty of "shameless skull-duggery," a charge of crooked or dishonest dealing.

In *Price v. Conway,* 134 *Pa.* 340, 19 *A.* 687, 8 *L. R. A.* 193, 19 *Am. St. Rep.* 704, the publication involved a direct charge of incompetency of the plaintiff as a teacher of shorthand.

In *Jones v. Greeley,* 25 *Fla.* 629, 6 *So.* 448, it was held that the word, "hypocrite", when used with respect to a professional man was actionable *per se.*

In *Moley v. Barager,* 77 *Wis.* 43, 45 *N. W.* 1082, the plaintiff was referred to as an "egotistical and over-estimated, self-conceited jackass," the newspaper article being headed with the plaintiff's name and a picture of a jackass. This was held to be libelous *per se.*

The defendants cite *O'Connor v. Sill,* 60 *Mich.* 175, 27 *N. W.* 13, 28 *N. W.* 162. Here the question of privilege entered, but the Court held that the article was not libelous of the plaintiff as a teacher of drawing. The alleged defamatory language was that her work was fragmentary and disjointed, and on the whole she was not a successful teacher of drawing; that the defendant had seen many evidences of infirmity of temper, and vacillating disposition, unfitting her for large usefulness as an educator, that he had found her irascible, petulant and contradictory; and that he had declined to discuss any matter of importance with her except in the presence of witnesses.

Among other cases, cited by the defendant, are *Wallace v. Homestead Co.,* 117 *Iowa* 348, 90 *N. W.* 835, and *Shattuck v. Allen,* 4 *Gray* (70 *Mass.*) 540.

To these may be added *Paxton v. Woodward,* 31 *Mont.* 195, 78 *P.* 215, 217, 107 *Am. St. Rep.* 416, 3 *Ann Cas.* 546,

where it was held not libelous *per se* to publish of a school teacher, "the noted Paxton, who has done more damage and less good than any teacher we have ever had. This district knows when it has had enough, so it turned the gentleman down."

Being of the opinion that some of the statements in the letter are not libelous at all; and that other statements, either of themselves, or in connection with the entire letter, are not libelous *per se,* and are actionable, if at all, only upon allegation of special damage, which allegation is clearly insufficient, the demurrers are sustained.