CLARA REYNOLDS GORDON *v.* THE NEWS-JOURNAL COMPANY, a corporation organized and existing under the laws of the State of Delaware.

*(January* 17, 1935.)

LAYTON, C. J., and HARRINGTON, J., sitting.

*John Biggs, Jr.,* and *C. Stewart Lynch* for plaintiff.

*Aaron Finger* (of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, Action on the Case for Libel, No. 70, May Term, 1934.

HARRINGTON, J., delivering the opinion of the Court:

This is an action on the case for libel, based on certain articles concerning the plaintiff, which appeared in the *Morning News,* a newspaper published by the defendant company in the city of Wilmington; and the case is before us on a demurrer to the plaintiff's declaration.

The first six counts of the declaration allege, in substance:

1. That a certain bank in Ridgely, Maryland, had been robbed and the vault thereof exploded by dynamiting.

2. That the defendant, intending to cause it to be suspected and believed that the plaintiff had been guilty of robbing that bank, and intending to injure her in her good name; and, also, intending to subject her to the pains and penalty by the laws of the State of Maryland provided

against and inflicted upon persons guilty of robbery, at Wilmington, in New Castle County, Delaware, did wickedly and maliciously compose and publish of and concerning the plaintiff a certain false, scandalous, malicious and defamatory libel in a newspaper called the *Wilmington Morning News* whereof the defendant was then the owner and publisher.

3. After setting out the alleged libelous publication, the innuendo, also, alleged that it referred to the plaintiff and that by it the defendant company had further meant and intended to charge that the plaintiff had robbed the bank at Ridgely, Maryland, and was, therefore, guilty of an indictable offense under the provisions of a certain specified statute of the State of Maryland, to-wit: burglary.

4. That the statute of the state of Maryland in question provided:

"Any person who breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe or other secure place by the use of nitroglycerine, dynamite, gunpowder or other explosive, shall be deemed guilty of burglary with explosives.

"Any person duly convicted of burglary with explosives shall be sentenced to the penitentiary for not more than 40 years." *Code Pub. Gen. Laws* 1924, *Art.* 27, §§ 38, 39.

It is, therefore, apparent that the plaintiff's action is based on the claim that the defendant company in its newspaper charged that she had committed certain criminal offenses in the State of Maryland, in violation of certain statutory provisions of that state.

None of the alleged libelous publications set out in these counts, and on which the plaintiff's cause of action is based, refer to the Maryland statute pleaded, or charge that the plaintiff had violated its provisions. The defendant company, therefore, not only contends that such articles are not sufficiently definite and complete in themselves to sustain an action for libel, but, also, contends that this lack

of particularity cannot be remedied by pleading what the plaintiff claims is the statutory provision applicable to the acts charged in those articles, and that make them criminal.

Generally speaking, the office of the innuendo in a declaration in an action for libel is merely to explain the meaning of the words used, if such words are of doubtful import, and, also, to show how they relate to the plaintiff; but it cannot add to or change the fair meaning of such words. 1 *Chitt. on Pl.* (*4th Amer. Ed.*) 384; 2 *Saund. Pl. & Ev.* 798, 799; *Odgers on Lib. & Sland.* (*5th Ed.*) 115, 116; *Crossland v. Freeman,* 7 *Boyce* 195, 105 *A.* 145; *VanVechten v. Hopkins,* 5 *Johns.* 211, 4 *Am. Dec.* 339.

Prefatory averments of extrinsic facts, which throw light on the meaning of the alleged libelous words, or show how they relate to the plaintiff, are, however, often essential to the plaintiff's declaration when the meaning of such words is not clear from the language used. *Crossland v. Freeman,* 7 *Boyce* 195, 105 *A.* 145; 1 *Chitt. on Pl.* (*4th Amer. Ed.*) 383.

Recognizing these principles, as we have already seen, the introductory parts of the counts in question not only allege that a certain bank in Ridgely, Maryland, had been robbed, but, also, allege that its vault had been exploded by the use of dynamite. While, therefore, some portions of the several counts, standing alone, would seem to indicate that they charge the plaintiff with having robbed the Ridgely bank, when each count is read as a whole it is apparent that the words "robbed" and "robbery" were used in them in a broad and not in a technical sense; and that they, in fact, intended to state that the libelous publications set out charged that the plaintiff had burglarized the Maryland bank in violation of the provisions of the statute of that state.

On referring to the language of the publication appear-

ing in each count, it is evident that it is not inconsistent with this charge. For the sake of brevity, that language will, however, not be set out.

■ If the publications in question had charged the commission of a common law crime, though in another state, in most cases it would not have been necessary to refer to the law of that state, but when, as in this case, the commission of a statutory crime in another state is charged, the declaration must refer to that statute; otherwise, it would not give sufficient notice of the basis of the plaintiff's claim. *Bundy v. Hart,* 46 *Mo.* 460, 2 *Am. Rep.* 525; *Langdon v. Young,* 33 *Vt.* 136; 37 *C. J.* 339. See, also, 36 *C. J.* 1197.

The same general principle was involved in *Kinney v. Hosea,* 3 *Harr.* 77, where the Court said:

"Where the words are uttered in relation to acts prohibited by our laws, it is not necessary to aver the law; the Court will take notice of it. But where the words charge an act not violating our laws, but criminal only as against the laws of another State, such laws should be averred, or referred to in such manner as to show that the words charged an offense criminally by the laws of that State."

■ It may be that under a strict application of the rules of pleading, it would be preferable to set out the Maryland statute in the inducement rather than in the innuendo of these counts, but that is not a fatal error. See 1 *Chitt. on Pl.* (15 *Amer. Ed.*) 406, *note.*

So far as pleading the Maryland statute is concerned, the same general principles, also, apply to the seventh and eighth counts of the declaration. The seventh count is based on the theory that the defendant company, in a publication in its paper, had charged that the plaintiff had fraudulently obtained money from the Elkton Bank and Trust Company, at Elkton, Maryland, on a worthless check. No statute was referred to in the alleged libelous publication, but after setting out that publication the plaintiff,

also, set out the Maryland statute, which showed that the act charged was an indictable offense in that state. The same method of pleading on a similar alleged libelous charge against the plaintiff was adopted in the eighth count, though another Maryland statute was pleaded.

After setting out the alleged libelous publication, and stating that it referred to the plaintiff, the third count of the declaration, in the innuendo, alleges:

1. "Further meaning and intending to charge in said publication that plaintiff had robbed the Ridgely, Maryland, bank, and, as such, was guilty of an indictable offense under the laws of the State of Maryland * * * to-wit: burglary, as provided in *Article* 27 of the *Annotated Code of Maryland, Section* 38 thereof." The Maryland Statute was then quoted.

2. "And further meaning and intending to charge in said publication that plaintiff was guilty of being a drunken person, and, as such, guilty of an offense under the laws of the State of Delaware. * * *"

3. "And further meaning and intending to charge in said publication that plaintiff was guilty of possessing and receiving stolen goods, and, as such, guilty of an offense under the laws of the State of Delaware. * * *"

4. "And further meaning and intending to charge in said publication that plaintiff was guilty of issuing worthless checks, and, as such, guilty of an offense under the laws of the State of Delaware. * * *"

It is not claimed that the alleged libelous publication set out in this count of the declaration does not contain language that justifies these allegations, but it is claimed that as it charges the plaintiff with the commission of more than one criminal offense in more than one state, that the count is duplicitous and, therefore, bad in form; and the defendant has demurred specially on that ground. See 1 *Chitt. on Pl.* (*4th Amer. Ed.*) 231, 514, 515.

It is not necessary for the declaration to set out in one count the whole of a publication containing alleged libelous passages if the meaning of the words, or passages, used is clear, and nothing is omitted that alters or qualifies

that meaning. 2 *Chitt. on Pl.* (15 *Amer. Ed.*) 632, *note; Odgers on Lib. & Sland.* (*2nd Eng. Ed.*) 405.

■ Though some portions of an entire publication relied on are not actionable, the whole of it may, however, be alleged in the same count of the declaration. 2 *Chitt. on Pl.* (15 *Amer. Ed.*) 636, *note;* 1 *Chitt. on Pl.* (*4th Amer. Ed.*) 384.

In fact, in *Hughes v. Reese,* 4 *M. & W.* 204, Lord Abinger remarked:

"You may put into one count for libel and slander all words spoken or written at one time, but I am not aware that you may put into one count matters published at different times."

■ It fairly appears from the declaration that all of the words alleged in this count appeared in the same publication; applying the above rules the count in question is, therefore, not objectionable on the ground of duplicity.

The alleged libelous publication set out in the fifth count is, in part, as follows:

"Concentrate on Del. Pair in Md. Bank Robbery

"Blanchfield is Held; Others Freed; Says Leach
Was in Ridgely

"Girl Makes Up Puzzles in Cell

"While the Maryland authorities are concentrating upon extraditing Chester Leach, of Smyrna, Del., from the Dover, Del., jail and hooking him up with George Blanchfield of Townsend, Del., as one of the robbers of the Bank of Ridgely at Ridgely, Md., the pretty Mrs. Clara Reynolds Gordon, age 32, of Kennett Square, Pa., is spending her time in jail making up cross word puzzles and laughing at the idea that she is a 'bandit queen.' The bank was robbed at 3:30 o'clock on the morning of March 16 of about $1,800. in cash by three safe crackers.

"The cool and indifferent Mrs. Gordon, who will be given a hearing Saturday, says she is not worrying one bit about the outcome of the whole affair."

As we have already seen following that publication and the allegation that it referred to the plaintiff that count then further alleged, in substance, that the publication in question had charged the plaintiff with having burglarized the Ridgely Bank. The Maryland statute, hereinabove quoted, was, also, set out.

The libelous publication alleged in the sixth count of the declaration was, also, as follows:

"Woman Up as Robber is Chic, Cool.

"Mrs. Clara R. Gordon 'Whole Show' at Ridgely Bank Job Hearing.

"With every available inch of space in the Caroline County Court House taken and a formidable force of lawyers and detectives battling to have her held on a charge of complicity in the robbery on the morning of March 16, of the Bank of Ridgely, in Ridgely, Md., pretty Clara Reynolds Gordon, age 31, of Kennett Square, Pa., formerly of Wilmington, Del., was the coolest and most collected prisoner today who ever faced a court here.

"Mrs. Gordon and George Blanchfield, of Townsend, are the only two suspects, aside from Chester Leach, of Smyrna, Del., who is fighting extradition at Dover, Del., who are still in the law's grip in the bank robbery probe. Blanchfield was held Wednesday in $15,000 bail on rather flimsy evidence on the testimony of Jerome Skaggs, of Townsend, Del., who turned State's witness.

"The attractive brunette, who is reputed to turn up in various localities as a blonde upon different occasions, was alert, constantly in consultation with her lawyers at every question; smiling blandly when the state found itself repeatedly against a stone wall, and the central figure of the hearing at all times.

"Whether she is the brains of a bank robber gang and whether half that the detectives have said about her is true, she proved herself in the court of Justice Henry R. Lewis today, capable of looking out for herself in a courtroom."

That count likewise further alleged that that publication referred to the plaintiff, and, also, in substance alleged that it charged her with having burglarized the bank at Ridgely, Maryland.

It then set out the Maryland statute, above referred to.

Generally speaking, and without considering any exceptions to the rule, perhaps we may say that any false

and defamatory words written and published of and concerning a person, and causing injury to his, or her, reputation are libelous. *Odgers on Lib. & Sland.* (*5th Ed.*) 17. See, also, *Snavely v. Booth, et al.*, 6 *W. W. Harr.* (36 *Del.*) 378, 176 A. 649.

In *Rice v. Simmons, 2 Harr.* 417, the Court said:

"That written slander to be actionable, must impute something which tends to disgrace a man, lower him in, or exclude him from society, or bring him into contempt or ridicule; and that the court must be able to say from the publication itself, or such explanations as it may admit of, that it does contain such an imputation."

 As a general rule, it, therefore, follows that any words falsely written or published of and concerning a person, a fair reading of which impute to him guilt of any crime, or of any fradulent, dishonest, or dishonorable conduct, are libelous. *Odgers on Lib. & Sland.* (*5th Ed.*) 17; *Newell on Sland. and Lib.* 9. See, also, *Todd v. Every Evening Printing Co.*, 6 *Penn.* 233, 66 A. 97.

 If, therefore, the publications set out in the fifth and sixth counts of the declaration charged that the plaintiff committed an indictable offense in the State of Maryland, namely burglary, they were libelous. And in reaching a conclusion on this question we must be governed by the construction that would be placed on the words used by the average person who read them, and not by the intent of the defendant company. It may be that the general rule, as to libelous publications, above stated, applies if the fair and reasonable inference from the words falsely written or published is merely to the effect that the person referred to in them has been accused of any such criminal, fraudulent, dishonest, or dishonorable conduct. *Odgers on Lib. & Sland.* (*5th Ed.*) 17; *Newell on Sland. & Lib.* 9.

The plaintiff concedes that the publications referred to are not necessarily libelous, so we need not determine that question. He contends, however, that they are, at least,

capable of a libelous construction, and that, under such circumstances, it is for the jury to determine whether they are libelous, or not.

■ Where the words of an alleged libelous publication, when read as a whole, are not reasonably susceptible of any defamatory meaning, a demurrer to the declaration should be sustained. *Newell on Lib. & Sland.* (2d *Eng. Ed.*) 20; *Commercial Pub. Co. v. Smith* (*C. C. A.*), 149 *F.* 704.

■ Where, however, such words are reasonably susceptible of two constructions, the one innocent and the other libelous, it is for the jury, and not for the court, to determine which construction is the proper one, and a demurrer to the declaration should be overruled. *Commercial Pub. Co. v. Smith* (*C. C. A.*), 149 *F.* 704; *Simmons v. Mitchell,* 6 *App. Cas.* 156; *Odgers Lib. & Sland.* (5th *Ed.*) 24, 110, 129.

■ In other words, as was aptly said in *Newell on Libel and Slander, supra,* at *page* 295:

"It is for the Court to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and for the jury to determine whether such meaning is truly ascribed."

■ Applying these principles, the demurrer to these counts should be overruled.

The publication relied on in the seventh count of the declaration is as follows:

"Two Identify Mrs. Gordon as Check Flasher

"Elkton Bank Clerks Accuse Girl Freed in Ridgely
Bank Robbery

"Mrs. Clara Reynolds Gordon, of Kennett Square, Pa., formerly of Wilmington, who was recently freed in connection with the robbery of the Bank of Ridgely after a magistrate's hearing at Denton, was identified by two bank witnesses yesterday as the woman who posed as Evelyn Anders and obtained $150. on a worthless check at the Elk-

ton Bank and Trust Company. The woman, who was accused of being the brains of a bandit gang, denied the check charge when arraigned before Magistrate George W. Owens here.

"The witnesses who identified the defendant are Miss Elizabeth Biddle, stenographer, and Frank Blake, Jr., a clerk. Blake said he handled the transaction and that he was positive Mrs. Gordon was the woman who presented the check. Miss Biddle, who said she paid particular attention to the conversation between Blake and the woman, was equally positive in her identification.

"Mrs. Gordon was arrested on the check charge by Sheriff Albert Buckworth of Cecil County, after her release following a hearing in Denton, where she was suspected of being the leader of the gang that burglarized and robbed the Bank of Ridgely. In this case, she proved an alibi which placed her on her way to Wilmington when the bank was actually robbed. Six other suspects, four of them Delaware men, were released in same case, due to lack of evidence.

"At the time of the investigation of the case, detectives said the attractive brunette moved about mysteriously, sometime bobbing up as a blonde and sometimes as a brunette.

"Since her arrest in the Cecil County case, she has been at liberty on $150. bail."

The following publication was, also, alleged in the eighth count of the declaration.

"Immediately after Mrs. Clara Reynolds Gordon, 32, was freed Saturday by Magistrate Henry R. Lewis of charges that she participated in the $50,000 robbery March 16 of the Bank of Ridgely, she was re-arrested by Sheriff Albert Buckworth, of Cecil County, at Denton jail on charges of obtaining money by false pretenses by means of a bogus check.

"She is said to have been identified by the cashier of the Elkton Bank and Trust Company as the woman who last December cashed an alleged bogus check for $150. signed by the name of Evelyn Anders. The check was said to have been drawn on a Pennsylvania Bank.

"Mrs. Gordon was released under $500. bail at Elkton about 9 o'clock last night for a hearing on the charge on May 18."

The defendant company contends that it appears from the publications set out in these counts that they are merely fair reports of judicial proceedings, and, therefore, privileged, unless published with a malicious intent. It, also, contends that, as no allegations of facts showing actual malice appear, the plaintiff can have no cause of action based on such counts, though it is alleged on general terms

that the articles in question were published with a malicious intent.

Subject to some exceptions that we need not consider, published reports of judicial proceedings are protected by the rule of qualified or conditional privilege, if they are fair, impartial or accurate accounts of what really occurred at the trial, and without exaggeration or the introduction of irrelevant, calumniatory matter. *Odgers on Lib. & Sland.* (*5th Ed.*) 308, 314, 315, 316, 320; *Hunt v. Star Newspaper Co., Ltd.,* [1908] 2 *K. B.* 309; *Stiles v. Nokes,* 7 *East.* 493; *Com. v. Blanding,* 3 *Pick.* (*Mass.*) 304, 15 *Am. Dec.* 214. This rule is based on public policy; the theory of law being that the general advantage to the country, in having such proceedings made public, more than counterbalances the inconvenience to the person whose conduct may be in question. *Rex v. Wright,* 8 *T. R.* 298; *Odgers on Lib. & Sland.* (*5th Ed.*) 308.

The privilege attached to fair and accurate reports of judicial proceedings, though established by the defendant, may, however, be rebutted by proof of actual malice on his part. *Odgers on Lib. & Sland.* (*5th Ed.*) 322, 323, 342, 344, 626. See, also, *Thomas v. Bradbury, et al.,* [1906] 2 *K. B.* 627. That is, the plaintiff may show that the report, though fair and accurate, was not published with honest motives and solely to afford information to the public, but with the malicious intention of injuring him. *Odgers on Lib. & Sland.* (*5th Ed.*) 323, 324.

Conceding, for the sake of argument only, that the defendant's contention that the publications set out in these counts are fair and accurate reports of judicial proceedings, a decision against the defendant company on its second contention would dispose of the demurrer. We will, therefore, consider that contention and base our conclusion on it.

It is sometimes said that malice is the gist of an

action for libel (*Newell on Sland. & Lib.* 582; *Odgers on Lib. & Sland.* [*5th Ed.*] 342; *Bromage v. Prosser,* 4 *B. & C.* 247, 10 *E. C. L.* 321), but that does not seem to be strictly correct, as actual malice is only an essential element in the proof ·of the plaintiff's case when there is a plea under which the defense of qualified privilege, or of fair and honest comment on a matter of general and public interest can be raised (*Odgers on Lib. & Sland.* [*5th Ed.*] 341, 342; *Bromage v. Prosser,* 4 *B. & C.* 247, 10 *E. C. L.* 321; *Haire v. Wilson,* 9 *B. & C.* 643, 17 *E. C. L.* 465).

In other words, the defendant's intention, or motive in using the words declared on, is immaterial if he has, in fact, injured the plaintiff's reputation. *Odgers on Lib. & Sland.* (*5th Ed.*) 342.

■ The allegation of malice does appear, however, in almost every declaration for libel, but it seems that it usually has a more or less technical meaning, and that the words "wrongfully" or "falsely" may be substituted for it. 1 *Chitt. on Pl.* (*4th Amer. Ed.*) 380, 381; 2 *Chitt. on Pl.* (15 *Amer. Ed.*) 622, *note; Odgers on Lib. & Sland.* (*5th Ed.*) 342, 625.

■ At common law, the question of privilege was raised under the plea of not guilty. *Odgers on Lib. & Sland.* (*2d Ed.*) 409, 411; 1 *Chitt. on Pl.* (*4th Amer. Ed.*) 487.

■■ Under the present English practice, a special plea of privilege is filed, and the plea of not guilty is no longer used. *Odgers on Lib. & Sland.* (*5th Ed.*) 625. Under that practice, while malice or some equivalent allegation still appears in the declaration, when the plea of privilege is filed, that allegation then takes on the meaning of actual malice and justifies proof of that character. *Odgers on Lib. & Sland.* (*5th Ed.*) 625. In fact, any other conclusion would require the pleading of evidence. Where, as in this case, the defendant contends that the matters set out in the

declaration clearly show that the publication was privileged, and to that extent has, therefore, anticipated a plea of that character, and malice of some other equivalent word is, also, alleged, it would seem that the same principles should apply, and that the declaration should be sustained. See *Thomas v. Bradbury, et al.*, [1906] 2 *K. B.* 627 (640).

Having reached this conclusion, it is unnecessary for us to determine whether the language of the publications above referred to is of such a temperate character, and so free from irrelevant and calumniatory matters that they can be said to be fair reports (see, however, *Com. v. Blanding*, 3 *Pick.* [*Mass.*] 304, 15 *Am. Dec.* 214; *Stiles v. Nokes*, 7 *East.* 493; *Hunt v. Star Newspaper Co., Ltd.*, [1908] 2 *K. B.* 309, *supra*), or whether the proceedings referred to can be classed as judicial proceedings. See *Odgers on Lib. & Sland.* 309, etc.

The demurrer to the various counts of the plaintiff's declaration is, therefore, overruled.