J. Bryson Corbett v. American Newspapers, Inc.,
a Corporation of the State of Delaware.

(*March* 10, 1939.)

LAYTON, C. J., RICHARDS and SPEAKMAN, J. J., sitting.

*Max Terry* for plaintiff.

*William Prickett* for defendant.

12

Superior Court for New Castle County, No. 73, January Term, 1938.

LAYTON, C. J., delivering the opinion of the Court:

The plaintiff finds no fault with the words of the article save in one particular. His complaint is based solely on the expression, "Corbett told him that if he came he would be keeping a date with death". These words, he says, charge him with having "planned a premeditated intent to murder".

Upon demurrer it is the province of the Court to determine whether words charged in a declaration amount to libel or slander, *Snavely v. Booth,* 6 *W. W. Harr.* (36 *Del.*) 378, 176 *A.* 649; and where they are not susceptible to any defamatory meaning, a demurrer should be sustained. *Gordon v. News-Journal Co.,* 6 *W. W. Harr.* (36 *Del.*) 396, 176 *A.* 657. The pleadings are to be construed most strongly against the pleader, as he must be supposed to have stated his case in the manner most favorable to himself, and the defendant may have the benefit of whatever may be stated in the complaint. *Snavley v. Booth, supra.* The whole of the publication must be considered to determine whether it is defamatory. *Gordon v. News-Journal Co., supra;* 17 *R. C. L.* 313; 36 *C. J.* 1157. The plaintiff may not, then, seize upon a sentence or a phrase and, detaching it from its context, found his action for libel thereon, if the publication as a whole is not, in fact, defamatory. In considering the defamatory quality of words, it is the duty of the Court to take them in their plain and natural meaning,

and to understand them as would a person of average intelligence and perception. Generally, it is the office of the innuendo to explain the meaning of doubtful words, and to show how they relate to the plaintiff; but the fair and reasonable meaning of words cannot be changed or enlarged by the innuendo. *Gordon v. News-Journal Co., supra.* A publication which necessarily or presumably will, as a natural and proximate consequence, occasion pecuniary loss to the person to whom it is used, *prima facie* constitutes a cause of action and a wrong without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication. Such a publication is actionable *per se. Snavely v. Booth, supra.* It follows that any printed or written statement which falsely and maliciously charges one with the commission of a crime is libelous *per se.* 17 *R. C. L.* 265. Special damage must be alleged with such particularity as to inform the defendant precisely of the case he is called upon to meet. *Snavely v. Booth, supra.*

 Guided by these principles the conclusion is that the publication is not defamatory in the respect charged. It is, of course, libelous *per se* to charge one with having unlawfully caused the death of another; but it is not libelous *per se* to impute that one killed another, where the expressions used are not such as to import the commission of criminal homicide. 36 C. J. 1203. When the publication is read and considered as a whole, the conclusion reached by the plaintiff and expressed by the innuendo, that he "had planned a premeditated intent to murder", is not justified.

The plaintiff undertakes to support this aspect of his complaint by reference to principles of the criminal law relating to the taking of life in self-defense. It would be a lengthy task serving no useful purpose to analyze the article, and to determine whether, by a strict application of legal principles to the facts, the plaintiff acted in self-defense. A thought might, perhaps, arise in the mind of a

lawyer scrutinizing the article critically, whether the writer had not, by insinuation, created a doubt with respect to the plaintiff's conduct; but viewed from the standpoint of a person of average intelligence and perception, it is clear that the plaintiff was represented as having killed the deceased, not unlawfully, but in circumstances affording full justification.

As a part of the publication is an artist's sketch which the plaintiff charges as describing him as "sitting calmly by the body of the deceased, with a lighted cigarette in one hand, a smoking gun in the other, a smile upon his face, and a manifestly indifferent and inhuman expression on his face", and, by the innuendo, it is said that it was meant thereby to convey the impression that "the plaintiff was a calloused, merciless, inhuman and degenerate person."

A person may be as grossly libeled, and as effectually exposed to hatred, ridicule and contempt by a picture as by written language; but here again, it is the province of the Court to determine, by inspection of the picture, whether the interpretation placed upon it by the plaintiff is justified. As in the case of words, so it is with a picture or drawing, if it be reasonably susceptible to two constructions, the one innocent, the other defamatory, it is for the jury, not for the Court, to determine which of the two interpretations is the proper one. *Gordon v. News-Journal Co., supra.* But, an inspection of the picture does not disclose "a smile upon his lips", nor "a manifestly indifferent and inhuman expression upon his face", whatever expression there may be. The picture is not a caricuture which, by exaggeration, suggests clearly a concrete conception. There is no portrayal of exultation or malevolence. The smoking of a cigarette does not indicate calmness necessarily. Nervous tension is indicated as well; and whatever may be said of the drawing, the plaintiff cannot, by his innuendo, interpret it as a portrayal of "a calloused, merciless,

inhuman and degenerate person". A jury could not so determine except by wild conjecture.

The picture is not libelous *per se,* and as the allegation of special damages is entirely insufficient under the rule announced in *Snavely v. Booth, supra,* a cause of action for defamation is not alleged.

The demurrer is sustained.