No. 36,275

HAZEL THOMPSON, *Appellee,* v. THE OSAWATOMIE PUBLISHING
COMPANY and NELSON REPPERT, *Appellants.*

(156 P. 2d 506)

Opinion filed March 10, 1945.

*Karl V. Shawver,* of Paola, and *Fred M. Harris,* of Ottawa, were on the briefs for the appellants.

*Bernard L. Sheridan, L. Perry Bishop,* and *J. Milton Sullivant,* all of Paola, were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for an alleged libel. Defendants' demurrer to plaintiff's petition was overruled and they have appealed.

In her petition, filed October 30, 1942, plaintiff alleged that she resides in Osawatomie, at which place the corporate defendant publishes a weekly newspaper, having about 2,200 subscribers, which is edited and managed by the defendant, Nelson Reppert; that on October 13, 1941, defendants published in said newspaper an article, under the head of "Court Proceedings," pertaining to a divorce action in which she was plaintiff and her husband, George W. Thompson, was defendant, and which read:

"*Hazel Thompson, v. George Thompson.* Divorce granted to plaintiff on grounds of extreme cruelty. Plaintiff given equity in and to property which constitutes residence and that she be given household furniture and effects. Mr. Thompson given ownership of laundry equipment. This ownership will be subject to right of use by Mrs. Thompson during such time as court shall hereafter order. Possession of laundry equipment shall be left subject to further order of the court. Custody and control of minor children of plaintiff and defendant be given to plaintiff subject to reasonable visitation privileges by defendant and subject to further order of court. Court reserves question of allowance of any support money for said minors and payment of same by defendant subject to further orders of court. Costs assessed against defendant."

That the statement so published was true and that no appeal had been taken from the decree of the court referred to; that on October 30, 1941, the defendants published in their newspaper the following article:

"To the Citizens of Osawatomie—I love and respect my children and would continue to help and guide them if permitted. I deny a previous statement in court news that I was ever cruel to any one of my family or any one else. I realize my health has been bad and was used to take my children and home. Signed George W. Thompson."

It was further alleged that defendants willfully and maliciously published the last quoted article with intent to expose plaintiff to public hatred and contempt and to deprive her of public confidence and to destroy her good reputation; that the article was false and libelous; that by reason of the implications contained in the article the people of Osawatomie and vicinity believed the statements contained therein and were caused to and did believe that plaintiff was guilty of perjury and other disrespectful, dishonorable, dishonest and unfair conduct, and that she had wrongfully taken advantage of the ill-health of George W. Thompson by illegally, maliciously and wrongfully securing a divorce from him and taking from him the custody of his children and his home.

That as a direct result of the defamatory publication plaintiff has been disgraced in society and brought into public hatred and disgrace; that her reputation and good character have been destroyed, and that she has been deprived of the opportunity to secure gainful employment sufficient to support herself and family, and has thus been ruined socially and financially; that her business, consisting of the operation of a home laundry which she had carried on successfully for five years and which was the sole means of support of herself and children, has been completely destroyed, and that practically all of her customers have withdrawn their business so that she can no longer operate the laundry at a profit, and that by reason thereof she has been deprived of profits amounting to at least $1,500; that she has been deprived of the opportunity to secure gainful employment to her damage in the sum of at least $2,000, and that by reason of the fact that the article was published willfully, maliciously and with intent to injure plaintiff she is entitled to punitive damages. The prayer is for judgment for $3,500 actual damages and $5,000 punitive damages.

The defendants filed separate but identical demurrers upon the general ground that the petition did not state facts sufficient to

constitute a cause of action in favor of plaintiff and against defendants, and particularized reasons therefor, which need not be stated separately.

The first question argued here is whether the words contained in the article complained of, published October 30, 1941, are libelous per se. Written defamatory words may be actionable per se or per quod. The difference goes to the pleading, proof and the character of damages which may be awarded. Words actionable per se are those the injurious character of which, read without innuendo, is a fact of common notoriety, established by the consent of men—so much so that the courts take judicial notice of it. Malice is implied from their publication, and general damages are conclusively presumed to result. In an action upon language libelous per se it is not necessary for plaintiff to plead special damages; neither is it necessary to plead an innuendo; indeed, if any innuendo is necessary to show the defamatory meaning or application of the language used, the language is not actionable per se. See 17 R. C. L. 264; 36 C. J. 1150; 33 Am. Jur. 39, and authorities there cited, including several decisions of our own. Tested by these authorities it is clear that the language is not actionable per se.

The petition contains allegations of inducement and innuendo designed to show that the article complained of applies to plaintiff and that the language used means certain things detrimental to her, and that certain general damages resulted. While innuendo may be used to explain the meaning of words employed by defendant, it cannot be used to change or enlarge their natural meaning. See 37 C. J. 24; *Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509; *Hanson v. Bristow*, 87 Kan. 72, 123 Pac. 725; *State v. Huff*, 96 Kan. 632, 152 Pac. 642; *Carver v. Greason*, 101 Kan. 639, 168 Pac. 869; *Brinkley v. Fishbein*, 134 Kan. 833, 8 P. 2d 318. Without restating the allegations of the petition it seems clear that the innuendo in the petition, in several material respects, gives an unnatural meaning to the language used in the article.

The only damages alleged are general damages. This is not sufficient. (37 C. J. 36, 37; 33 Am. Jur. 223, 224.) No customer of the laundry is named whose business was lost by reason of the article, nor is the extent of any such loss specifically alleged. In this connection we take note of the decree of the court which gave the laundry equipment to defendant subject to plaintiff's use during such time as the court might order. The use of the laundry is

subject to the decree of the court and may not be affected at all by the article in question. No one is named who declined to employ plaintiff because of the publication in question and no facts are pleaded in issuable form from which plaintiff's damages in that respect might be computed. Since the article is not actionable per se, its publication does not import malice, and no specific facts indicating malice are pleaded.

Our conclusion is the petition stated no cause of action. The judgment of the court below is reversed with directions to sustain the demurrers filed by defendants.