[Civ. No. 7394. Third Dist. Nov. 22, 1947.]

OTIS D. BABCOCK, Appellant, v. McCLATCHY NEWS-PAPERS (a Corporation), Respondent.

Otis D. Babcock, in pro. per., Frank A. Prior and George M. Naus for Appellant.

Downey, Brand, Seymour & Rohwer, Sullivan, Roche, Johnson & Farraher and John F. Hamlyn for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment rendered on the pleadings, after he had been given leave to amend his complaint, but refused to do so.

The complaint purports to charge the defendant with libel in publishing the statement of a citizen, in the form of an inquiry affecting the qualifications of opposing candidates in a political campaign for election to the office of District Attorney of Sacramento County. The plaintiff was completing his term as district attorney, and sought reelection. His opponent was John Quincy Brown, the present district attorney. An attorney by the name of A. J. Harder challenged plaintiff to debate, in a public meeting, the qualifications of the respective candidates. Harder said: "The people of this county have a right to ask: 1. How was it possible for you, Mr. Babcock, going into office dead broke, on a salary of $4,500 to buy an office building at a purported price of $80,000?" Also: "2. Why do you contend you have cleaned up vice when the public clinic shows an increase of venereal diseases? and, 3. How can you claim to have efficiently run your office in the face of many dismissals of cases and failures to convict persons accused of crime?" Mr. Harder added that: "In contrast to the record of the incumbent Babcock, John Quincy Brown, deputy state attorney general, has an exemplary record, both as a member of the bar and in his private life. Sacramento needs this man."

The foregoing challenge to debate was published in the defendant's newspaper at Sacramento, in August, 1942, under the caption:

"HARDER ISSUES CHALLENGE, GETS BABCOCK REPLY

District Attorney Accepts Offer to Debate on
Vice, Convictions."

The amended complaint for libel, under section 45 of the Civil Code, was filed in Sacramento County in January, 1943. It contains the following allegations and also excerpts from the published article:

"That the defendants, knowing the premises, on the 8th day of August, 1942, falsely and maliciously and with intent and design to injure, disgrace and defame this plaintiff and bring him into disgrace and obloquy, composed and published and caused to be published a certain malicious libel in the Sacramento Bee containing among other things the false, libelous and malicious matters following:

" 'How was it possible for you, Mr. Babcock, going into office dead broke, on a salary of $4,500, to buy an office building at a purported price of $80,000?

. . . . . . . . . . . .

" 'In contrast to the record of the incumbent Babcock, John Quincy Brown, deputy state attorney general, has an exemplary record, both as a member of the bar and in his private life. Sacramento County needs this man.' "

As innuendo of the foregoing language, the complaint added the following:

"That the defendants meant thereby to be understood as meaning and asserting, and the readers of said publication, in fact, understood as meaning and asserting, that plaintiff was a dishonest public official and that he was guilty of corruption in his official duties while occupying the office of District Attorney of Sacramento County."

The complaint alleges no special damages. It merely alleges general damages in the sum of $30,000 and asks for exemplary damages in the further sum of $20,000. It is not contended that special damages were pleaded.

A demurrer to the sufficiency of the allegations of the complaint was overruled.

The defendant filed its answer, denying the essential allegations of the complaint, and affirmatively alleging that the published article was privileged under section 47 of the Civil Code, together with other defenses.

Paraphrasing the published question upon which the plaintiff chiefly relies to support his action for alleged slander, it means, substantially, how was it possible for the plaintiff to buy an office building for the purported price of $80,000, on his salary of $4,500 per year, since he was dead broke when he took office. Or, in other language, it means where did plaintiff get the money with which he purchased the $80,000 building? That seems to be a fair and legitimate question to ask a public officer who is a candidate for reelection, provided the assumed basis for the question is truthfully stated. It

contains the assumption of facts that plaintiff was dead broke when he took office; that his salary was $4,500 per year, and that he thereafter bought an office building for which he paid $80,000. Those facts are not denied. To state an actionable cause for libel it would be necessary to specifically allege that the said essential elements of that question were false. It was insufficient to merely allege generally that the published article was false and malicious. Realizing that the truthfulness of the implied averments upon which the question was based would be a complete defense to the charge of libel, the defendant sought to take the deposition of the plaintiff to elicit evidence upon those possible issues. The plaintiff refused to answer questions on those issues on the ground that they were not material in the suit for libel. Upon citation to show cause why plaintiff should not be required to answer the questions, the trial court held they were immaterial and refused to instruct plaintiff to answer the questions. Upon mandate, this court held that the questions were material and that plaintiff should be required to answer them. A hearing was granted by the Supreme Court in that mandate proceeding. The Supreme Court held (*McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386 [159 P.2d 944), at page 395, that:

"[I]f . . . evidence of plaintiff's financial transactions would be relevant to such potential issues, defendant would be entitled to take his deposition along the lines suggested."

Subsequently, upon notice, the defendant moved the trial court for judgment on the pleadings, on the theory that the amended complaint fails to state a cause of action since the gist of the charge relied upon was not alleged to be untrue; that the complaint does not charge libel *per se,* and that no special damages were alleged therein. That motion was heard December 27, 1946, before the Honorable J. O. Moncur, a visiting judge. He granted the motion, and judgment was accordingly rendered that plaintiff take nothing by his action. From that judgment this appeal was perfected.

Two questions are involved on this appeal. First, does the amended complaint state an action for libel *per se?* Second, if an action for libel *per se* is not alleged, is the complaint fatally defective, since no special damages were alleged or claimed?

 We are of the opinion the amended complaint fails to state a cause of action for libel *per se,* and that, since it does not specifically deny the gist of the implied charge, and

fails to allege or ask for special damages, the complaint is fatally defective, and the court, therefore, properly rendered judgment on the pleadings. The plaintiff was granted opportunity to amend his complaint, but refused to do so.

The plaintiff relies solely on the two questions previously quoted from the complaint, namely, how could he go into office dead broke and buy an office building for $80,000 on his salary of $4,500? and, second, in contrast with the record of plaintiff, his opponent, Mr. Brown, has an *exemplary* record as a member of the bar and in his private life.

Those questions were propounded by Mr. Harder, a citizen of Sacramento, as the basis for a challenged public debate between himself and plaintiff upon the qualifications of the respective candidates. It will be observed that nowhere in the published article was the plaintiff specifically charged with dishonesty or corruption as a public officer, or otherwise. We concede that the two questions are open to the construction that dishonesty and corruption may be inferred. But we are convinced both statements are reasonably susceptible of a contrary construction. If that be true, then, under California authorities, the complaint fails to state a cause of libel *per se,* in spite of the fact that the complaint alleges an innuendo charging defendant with meaning that plaintiff was guilty of dishonesty and corruption as a public officer. Sifted to its essential meaning, the first question is an inquiry as to where plaintiff obtained the money with which he purchased an office building which cost him $80,000. Obviously, that question reasonably infers that if it developed that plaintiff secured the money by gift, inheritance or profitable business investments, the purchase of the building was perfectly legitimate. It is true that, emphasizing the acquiring of means in excess of plaintiff's salary, the answer, as a defense, charges plaintiff with violating section 78 of the Sacramento County charter by engaging in private practice of the law contrary to the prohibition that officers "shall not engage in any private practice." But since that is a mere defense, which does not appear in the complaint, we shall disregard it. ▇ The innuendo is itself a recognition of the fact that the language may not be considered defamatory on its face. When a defamatory meaning is necessarily apparent from the language employed, no innuendo is necessary. (Newell's Libel and Slander, 4th ed., 588, § 542; 37 C.J. 147, § 671.) The innuendo infers that the language is

open to the reasonable construction that it is not slanderous *per se,* or actionable.

It is self-evident, with respect to the first question, that the inquiry may be construed to mean merely, where did plaintiff procure the means with which he purchased the $80,000 building? Of course, it is also open to the inference that the money may have been corruptly or dishonestly acquired. In effect, it may be construed to mean that, since he took office financially broke, the electors have a right to ask the candidate for reelection whether he obtained funds from gifts, inheritances or profitable investments with which he purchased the property. As the respondent expresses it, the question is reasonably susceptible of the construction, "How did you make your money? How did you increase your worth?" If it is reasonably open to that construction, the complaint does not state an actionable cause of libel *per se,* in spite of the innuendo. The question is based on the assumption that plaintiff took office "dead broke" and that he subsequently bought a building which cost him $80,000. We must assume both statements are true since plaintiff failed to deny either of them. If those statements be true it would seem to be a legitimate inquiry to ask the plaintiff, in effect, did you get the money from gifts, legacies or profitable investments, or otherwise? We conclude that the question does not constitute an actionable cause of libel *per se.*

The second alleged libelous statement included in the complaint and relied upon by plaintiff is certainly open to the reasonable construction that the *record* of plaintiff's opponent, Mr. Brown, as compared with that of plaintiff, is "exemplary," as a public officer and in private life. It does not impute dishonesty or corruption in office. To say that one man's record, as a prosecuting officer or in private life, is *exemplary* as compared with another, does not ordinarily mean that the less ideal man is corrupt, dishonest or faithless. Merely because a man is not exemplary would not tend to expose him to "hatred, contempt, ridicule, or obloquy," or cause "him to be shunned or avoided." Primarily the word "exemplary" merely means serving as an example, a pattern, a model, ideal or superior. Characterizing the record of a lawyer as exemplary would ordinarily mean he was able, capable, forceful, industrious and successful. It might also mean he is reliable and trustworthy. To say that a lawyer is not ideal or exemplary ordinarily means that he may lack

those characteristics in the highest degree, and that he might be careless, negligent, indolent, or possibly unreliable. We think that statement is not libelous *per se* since it is susceptible of either construction. For the purpose of determining that question the innuendo adds nothing of value to the complaint.

An innuendo may not enlarge the charge or change the import of the language employed. It is permitted for the purpose of explaining the meaning of language which is ambiguous or uncertain in its application. (Newell on Slander and Libel, *supra*, pp. 588, 589, §§ 542, 543; 16 Cal.Jur. 88, §§ 57-60.) The question as to whether a complaint states an actionable cause for libel is a problem for the determination of the court. (*Mortensen* v. *Los Angeles Examiner*, 112 Cal. App. 194, 202 [296 P. 927].)

In the interest of public welfare, an individual or a newspaper is privileged to challenge the fitness or qualifications of a candidate for public office, provided the statements with relation thereto are true. In the case of *Eva* v. *Smith*, 89 Cal.App. 324 [264 P. 803], a member of the city council of San Mateo published in the "San Mateo Times" regarding the defendant and other candidates for reelection, among other things, that "I am strongly in favor of keeping the City Council free from any suspicion or taint of unfairness in the City's contracts. No contractor should be influenced to buy from any particular firm. . . ." The complaint contained an innuendo alleging that defendant intended thereby to charge plaintiff with dishonesty in performance of his official duties as a member of the city council. A demurrer to the complaint was sustained without leave to amend. The order sustaining the demurrer was affirmed. On appeal the Supreme Court said:

"Taking the article as a whole, it seems clear to us that it amounts to no more than a criticism of plaintiff's qualifications for office and one which defendant was entitled to make. No malversation on the part of plaintiff is charged. . . . Nor does the article charge that plaintiff was guilty of dishonest conduct with reference to any public contracts. An individual who seeks or accepts public office invites and challenges public criticism so far as it may relate to his fitness and qualifications, and it is a proper subject of comment. It is, therefore, justifiable for one to communicate, bona fide, to the constituency any matter respecting a candidate material to the election. . . . No one, of course, has a right to *wrongfully* impute dishonesty

to him. . . . The conduct of public officers being open to public criticism, it is for the interest of society that their acts may be freely published with fitting comment or strictures. . . . It would be absurd to hold as libelous to say of a candidate for public office that he was utterly unworthy of public confidence. . . . And, again, it has been said that it is one of the infelicities of public life that a public officer is thus exposed to critical and often unjust comment; . . . . The purpose of the rule permitting fair and honest criticism is that it promotes the public good and hence is based upon public policy. (*Triggs* v. *Sun Printing Assn., supra* [179 N.Y. 144 (103 Am.St.Rep. 841, 1 Ann.Cas. 326, 66 L.R.A. 612, 71 N.E. 739)].) In thus permitting criticism the law gives a wide liberty, there being an honest regard for the truth. Within this limit public journals, speakers, and private individuals may express opinions and indulge in criticism upon the character or habits, or mental or moral qualifications of official candidates. (1 Cooley on Torts, p. 443.)''

■ Section 256 of the Penal Code provides that a communication made by one who is interested in the subject, to one who is also interested therein, is not presumed to be malicious, ''and is a privileged communication.'' We must presume that newspapers and the electors of a particular locality are interested in the character and fitness of their public officers. As the Eva case, *supra,* from which we have quoted, says, such statements should be made with an ''honest regard for the truth.''

Concerning the liability for alleged libel in publishing an article involving a labor dispute, it is likewise said in *Emde* v. *San Joaquin County Central Labor Council,* 23 Cal.2d 146, at page 154 [143 P.2d 20, 150 A.L.R. 916]:

''Because, however, the peaceful settlement of labor contention is a matter of vital public concern, the parties to such a controversy must be accorded the right to make fair comment upon the facts involved, at least so long as the criticism *is based upon a true* or privileged statement of fact.'' (Italics ours.)

In *Snively* v. *Record Publishing Co.,* 185 Cal. 565, it is said at page 574 [198 P. 1]:

''Since a libel is 'a false and unprivileged publication' (section 45), it follows that the publication must be both false *and* unprivileged in order that it shall constitute an actionable libel.''

■ From the foregoing it follows that since the plaintiff did not deny the truthfulness of the essential facts upon

which the inquiry complained of was clearly based, we must assume those facts were true, and that the complaint, therefore, fails to state an actionable cause for libel *per se*.

The complaint in this case fails to allege special damages. The rule is established in California and in other jurisdictions that, where no special damages by reason of the publication are alleged, the existence of an actionable cause for libel depends upon whether or not the complaint alleges facts which are libelous *per se*. In other words, if the complaint fails to allege an action which is libelous *per se*, it is necessary to plead special damages or the complaint is fatally defective for failure to state an actionable cause based on libel. (*Peabody* v. *Barham*, 52 Cal.App.2d 581 [126 P.2d 668]; *Washer* v. *Bank of America*, 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338]; *Ruble* v. *Kirkwood*, 125 Ore. 316 [266 P. 252, 254]; *Thompson* v. *Osawatomie Pub. Co.*, 159 Kan. 562 [156 P.2d 506]; *Knapp* v. *Post Printing & Pub. Co.*, 111 Colo. 492 [144 P.2d 981]; 37 C.J. 35, § 358; 86 A.L.R. 848, note; 12 So.Cal. L.Rev., p. 239.)

Other California cases recognized the foregoing rule by holding either directly, or in effect, that it is only when the complaint fails to state an action which is libelous *per se*, that it is necessary to plead special damages. (*Pollock* v. *Evening Herald Pub. Co.*, 28 Cal.App. 786, 789 [154 P. 30]; *Harris* v. *Curtis Pub. Co.*, 49 Cal.App.2d 340, 344 [121 P.2d 761]; *Schomberg* v. *Walker*, 132 Cal. 224 [64 P. 290]; *Layne* v. *Kirby*, 208 Cal. 694 [284 P. 441]; *Bates* v. *Campbell*, 213 Cal. 438 [2 P.2d 383].) In the Schomberg case, the court said, at page 227: "It is only when the libelous meaning of the publication is *covert*—not apparent on the face of the language used—that averment and proof of special damage is required." In that case the Supreme Court held that the alleged publication was libelous *per se*, and that it was, therefore, not necessary to have alleged special damages. For that reason the judgment in favor of the defendant was reversed. In the Pollock case a judgment in favor of the defendant was affirmed on appeal. The appellate court said, at page 788: "It appears to be the rule that 'in order to maintain an action upon words which are not libelous . . . *per se*, the plaintiff must have suffered some special damage, and the recovery is limited to compensation therefor.' " In the Harris case a judgment of nonsuit was affirmed on appeal. The court said: "Where the publication is not libelous *per se* the matters referred to must be

alleged in order to state a cause of action.'' In the Layne case an order sustaining a demurrer to the complaint was reversed on appeal. The Supreme Court held that the alleged defamatory matter was libelous *per se*. The same proceeding and conclusion was reached in the Bates case.

In the Peabody case, *supra*, upon which the respondent in this case chiefly relies, a judgment of nonsuit was affirmed on appeal. A hearing was denied by the Supreme Court. In determining that a complaint for libel fails to state an actionable cause, unless the defamatory matter relied upon consists of libel *per se*, or alleges special damages, the appellate court said:

''A publication is libelous *per se* when on its face and without the aid of innuendo, it exposes a person to hatred, contempt. . . . Whether the language used is libelous *per se* must be determined from the language itself. (*Mortensen* v. *Los Angeles Examiner*, 112 Cal.App. 194 [296 P. 927].) In order to determine whether it is libelous *per se* no resort may be had to any declaration as to the meaning of the words or as to the intention of their author; it must be construed apart from allegations of innuendo and inducement. [Citing authorities.] Also in determining whether a publication is libelous *per se*, its language must be given the natural and popular construction of the average reader. . . .

''When offending language is susceptible of an innocent interpretation it is not actionable *per se*. Neither will language be given a libelous character unless such is the plain and obvious import. . . . Neither is it actionable *per se* if the offending language has more than one meaning. [Citing authorities.] . . .

''. . . But in addition to an allegation of the inducement [when the defamatory matter is not libelous *per se*], it is also necessary for plaintiff to allege special damages by reason of the meaning gained from the publication by specifically designated parties affected by the publication with the items of losses suffered in each instance. . . .

''. . . The absence of such allegation and of the allegation of special damages renders plaintiff's complaint utterly inadequate to warrant an inquiry into the results of the publication.''

In the Washer case, *supra*, the Supreme Court reversed an order sustaining a demurrer to the complaint for failure to state a cause of action. The Supreme Court held that the complaint adequately alleged facts sufficient to state a cause

for special damages. It, however, specifically referred to the Peabody case with entire approval, from which case we have previously quoted. At page 828 of the Washer case it is said:

". . . And when the offending language is susceptible of an innocent interpretation, it is not actionable *per se,* but, in addition to an innuendo, it is necessary for the plaintiff to allege special damages by reason of the meaning gained from the publication."

In support of the foregoing rule, which appears to be firmly established in this state, the respondent in this case has cited numerous authorities from a score of other jurisdictions. But it is not necessary to discuss those cases, or the numerous cases to the contrary from other jurisdictions, upon which the appellant relies.

In support of the aforesaid rule of pleading with respect to the sufficiency of a complaint for libel, it is interesting to note that the Legislature adopted section 45a of the Civil Code (Stats. 1945, ch. 1489, p. 2762) after this suit was commenced. That section provides:

"A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. *Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. . . .*" (Italics added.)

We assume the Legislature adopted the preceding section in recognition of the established rule of pleadings which prevails in California. The adoption of section 45a of the Civil Code merely enacts, in code form, the rule which has long been in force in this state. (1 Witkin's Summary of California Law, 6th ed., p. 674, § 85; 19 So.Cal.L.Rev., p. 121.)

We conclude that the complaint in this case fails to state an actionable cause for libel *per se,* and that since no special damages are alleged, and plaintiff refused to amend his complaint in that respect, the motion for judgment on the pleadings was properly granted.

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 19, 1948.