249 P.2d 192

**GOUGH et al. v. TRIBUNE–JOURNAL CO. et al.**

**ALLEN v. TRIBUNE–JOURNAL CO. et al.**

Nos. 7904, 7905.

Supreme Court of Idaho.

Oct. 15, 1952.

174

Anderson & Anderson, Pocatello, for appellants.

Merrill & Merrill, Pocatello, for Tribune-Journal.

Bistline & Bistline, Pocatello, for Martin.

Carl C. Christensen, Pocatello, for Almond.

KEETON, Justice.

Appellants Laura S. Gough and husband (Case No. 7904) brought an action against the Tribune-Journal Company, Ennis Martin and Bert Almond, respondents here, to recover damages for alleged libel. Appellant George W. Allen brought a similar action (Case No. 7905) claiming damages for the same publication. The lower court in each case sustained a general demurrer to the complaint and dismissed the proceedings. Both plaintiffs appealed. As each case presents the same question of law, the cases were consolidated for decision.

Appellants George W. Allen and Laura S. Gough were at all times mentioned in the complaint county commissioners of Bannock County.

The article complained of was published in the Idaho State Journal, February 12, 1952, and purported to recite the proceedings of the county commissioners' meeting held to fix and determine the amount of the budget for the ensuing fiscal year as provided for in Sec. 31–1605, I.C.

A news story of the meetings so published in the Journal and alleged to be libelous is as follows:

"Taxes and Tempers

"Allen-Gough Walkout Arouses Angry Talk Of Recall Move

"An angry Pocatello resident took a step Tuesday in a proposed recall of Bannock County Commissioners.

"Two commissioners walked from a public budget hearing Monday afternoon in the midst of talk of a recall.

"Herb Poynter, one of the leaders at Monday's session, appeared at the office of commissioners Tuesday and demanded four items be taken from the budget. If not, he said, he will canvass Bannock County with a recall petition.

"Four Items

"Items Poynter demanded be cut were:

"(1) $1500 for a road superintendent.

"(2) $1500 for a construction foreman.

"(3) $2500 for extra attorney fees.

"(4) $10,000 for putting the old General hospital into use.

"The hearing Monday was for discussion of the proposed 1952 county budget, boosted $185,000 for 1952. It was $770,931 in 1951 and is $956,753 for 1952.

"Recall was the action proposed by several present as an answer to the commissioners if they failed to cut the budget after protests were made. Commissioners may (1) consider the protests, or (2) disregard them and pass the budget as they like.

"Commission Chairman George W. Allen and Commissioner Laura Gough

walked from the meeting. Bert Almond of Downey said he wanted it known that commissioners walked out.

"Sheriff Stands By

"Sheriff Alma Marley and Deputy N. S. Fordyce were in the court room throughout the hearing. Marley said Allen had requested him to attend.

"Budgets were discussed and several points earlier opposed by Commissioner Roy T. Hale were opposed by citizens.

"Almond said, near the close of the hearing:

" 'A number of taxpayers from Bannock County spent time and money to come to this hearing. We hope we have accomplished something.

" 'We've noticed a number of items that could be cut. At least all of us couldn't be wrong.

" 'Mr. Chairman, I think you have evaded every issue put to you, that you have been very stubborn.

" 'If we have found anything today, we've found you don't plan to listen to us.

" 'Some Other Way'

" 'You haven't answered us, but we intend you shall answer us. Why did you ask us to come in? We protest the amount of the budget, but if you are bull-headed about it, we will seek some other way.'

"Almond said 'the other way' would be by recall.

"Allen said Commissioners will consider the arguments.

"Ennis Martin of McCammon asserted 'the whole thing smells' and said a recall will be launched if the present attitude continues.

"Allen replied:

" 'I agree. I hope I am first'.

"The walkout then occurred.

"Almond said neither he nor the others were finished talking but that both Allen and Mrs. Gough walked out without giving them a chance to finish.

"Martin said he would 'find out' about a recall of Allen 'if someone doesn't beat me to it'.

"For additional news of the budget hearing, see story on page 12."

The complaint alleges that the article injured the appellants in their good name and reputation and they were thereby damaged.

No special damages were alleged and the inquiry here is whether or not the words of the article on their face tend to impeach the honesty, integrity, virtue or reputation of the plaintiffs, or whether or not the article, by innuendo or otherwise, charges the appellants with the commission of a crime or exposes appellants to public hatred, contempt or ridicule.

Appellants in their brief state the issue for decision as follows: "The question is whether or not the article of and concerning the plaintiffs is actionable without alleging special damages."

One of the particular parts of the article complained of and alleged by appellants to be libelous is:

"Commission Chairman George W. Allen and Commissioner Laura Gough walked from the meeting. Bert Almond (one of the defendants) of Downey said he wanted it known that commissioners walked out."

Appellants contend that this was an omission of a public duty by a public officer and constituted a misdemeanor, that is, failure to hold a public hearing on the budget and appellants refer to Sec. 18–315, I.C., which provides:

"Every wilful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision shall have been made for the punishment of such delinquency, is punishable as a misdemeanor." Libel is defined, Sec. 18–4801, I.C., as:

"* * * malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt or ridicule."

A newspaper has the right to make fair comment on acts of public officers and report proceedings and actions taken by elective officers including county commissioners without subjecting it to pay damages in libel suits.

Sec. 18–4807, I. C. reads:

"No reporter, editor, or proprietor of any newspaper is liable to any prosecution for a fair and true report of any judicial, legislative, or other public official proceedings, or of any statement, speech, argument, or debate in the course of the same, except upon proof of malice in making such report, which shall not be implied from the mere fact of publication."

See also, Jenness v. Co-operative Publishing Co., 36 Idaho 697, 213 P. 351.

In the matter under consideration there was no innuendo inserted and no special damages claimed. The article in question in a fair way simply stated that the county commissioners had been criticized by taxpayers on budget matters and suggested that a recall election might be asked and stated that some of the commissioners, naming them, walked out of the meeting.

When a writing is alleged to be libelous per se, the entire article must be read and considered as a whole in the plain and natural meaning of the words used, and as a person of ordinary intelligence and perception would understand the article. Corbett v. American Newspapers, Inc., 1 Terry 10, 5 A.2d 245; Snavely v. Booth, 6 W.W.Harr. 378, 176 A. 649.

Examining the article in question, we are of the opinion that an ordinary per-

son of average intelligence could not read into the news story by innuendo or otherwise that the commissioners had been accused of any dereliction of duty, which could be made the basis of a libel suit, or of any crime.

 Thus in Ellsworth v. Martindale-Hubbell Law Directory, 66 N.D. 578, 268 N.W. 400, 405, the Supreme Court of North Dakota said:

"The next point to be determined is whether the alleged defamatory matter constitutes libel per se or libel per quod. In determining whether a writing or publication is libelous per se, it must be stripped of all innuendo, colloquium, and explanatory circumstances. Sweeney & Co. v. Brown, 249 Ky. 116, 60 S.W.2d 381; Wiley v. Oklahoma Press Pub. Co., 106 Okl. 52, 233 P. 224, 40 A.L.R. 573; Holway v. World Pub. Co., 171 Okl. 306, 44 P.2d 881; Lemmer v. The Tribune, 50 Mont. 559, 148 P. 338; Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 86 A.L.R. 466."

 In 53 C.J.S., Libel and Slander, § 13, p. 59, the author states the rule as follows:

"In order to be libelous per se, the defamatory words must be of such a nature that the court can presume as matter of law that they will tend to disgrace and degrade the person or hold him up to public hatred, contempt, or ridicule or cause him to be shunned and avoided; in other words, they must

reflect on his integrity, his character, and his good name and standing in the community, and tend to expose him to public hatred, contempt or disgrace. The imputation must be one which tends to affect plaintiff in a class of society whose standard of opinion the court can recognize. It is not sufficient, standing alone, *that the language is unpleasant and annoys or irks plaintiff, and subjects him to jests or banter, so as to affect his feelings.*" (Emphasis supplied.)

If we read the article challenged here and apply the above rules, it is apparent that the county commissioners were holding a public budget hearing which the taxpayers of the county were invited to attend and express their opinions.

The comments made by the taxpayers were in the nature of criticism of the action of the board of county commissioners. The taxpayers not only have a right, but should, when in their opinion circumstances justify, criticize the budget. Otherwise there would be no reason for holding a hearing. Persons in public office cannot expect all remarks made concerning them to be complimentary, and a criticism of the budget in the instant case does not adversely reflect on the integrity of the county commissioners.

Threatening the commissioners with a recall election is not libelous. If the taxpayers could not criticize the proposed

budget of the commissioners, or if the hearing were only for the purpose of hearing laudatory remarks from the constituency, there would be no necessity or need for holding the hearing, and the statute providing for such meeting or hearing would become meaningless.

While the courts of this country are not in accord as to what publication is or is not libelous per se, and each case must be considered under the state law in which the libel is alleged to have occurred, it seems to us that prior decisions of this Court dispose of the matter so far as these particular. cases are concerned.

Articles offending or injuring the feelings of persons seeking to recover damages for libel have been held nonactionable by this Court in several well-considered opinions. In Barton v. Rogers, 21 Idaho 609, 123 P. 478, 40 L.R.A.,N.S., 681, minutes made by the board of trustees of a school district in discharging a superintendent of schools were held to be nonactionable. In Jenness v. Co-operative Publishing Company, supra, and Sweeney v. Capital News Pub. Co., U.S.D.C. Idaho, 37 F.Supp. 355, the same rule was adhered to. For other cases to the same effect see: Wimmer v. Oklahoma Pub. Co., 151 Okl. 123, 1 P.2d 671; Locke v. Mitchell, 7 Cal.2d 599, 61 P.2d 922; Arnold v. Ingram, 151 Wis. 438, 138 N.W. 111; Dilling v. Illinois Publishing & Printing Co., 340 Ill.App. 303, 91 N.E.2d 635; Snavely v. Booth, supra; Fedderwitz v. Lamb, 195 Ga. 691, 25 S.E.2d 414;

Ryan v. Hearst Publications, Inc., 3 Wash. 2d 128, 100 P.2d 24; Montgomery Ward & Co. v. McGraw–Hill Pub. Co., 7 Cir., 146 F.2d 171.

If this class of publication were actionable, without the plaintiffs being required to show injury and damage, it could result in unlimited number of suits against newspapers or other publications for simply stating what occurred at a public hearing; and newspapers would be so bridled as never to know what articles could or could not be safely published.

Appellants contend that on the. sustaining of a general demurrer to the complaint, the action should not have been dismissed without giving them an opportunity to amend.

By the provisions of Sec. R5–904, I.C., a complaint may be amended once as a matter of course, and under Sec. R5–905, I.C., the court may, in furtherance of justice and on such terms as may be proper, allow amendments.

■ Great liberality should be exercised in permitting amendments to pleadings in furtherance of justice between the parties. Kroetch v. Empire Mills Co., 9 Idaho 277, 74 P. 868; Petty v. Petty, 66 Idaho 717, 168 P.2d 818, 164 A.L.R. 520.

■ The appellants did not ask leave to amend the complaint either before or after judgment. If the appellants were unjustly deprived of the right to amend, the question should have been raised in the district court and not for the first time on

appeal. Where no application to amend is made and no amendments suggested, and where it affirmatively appears that the complaint could not be amended so as to state a cause of action, by innuendo or otherwise, and no suggested amendments, either before or after judgment, in the trial court are advanced, it is not error on sustaining the demurrer to dismiss the action. Sherman v. Watson, 58 Idaho 451, 74 P.2d 181; Harrison v. School Board, 68 Idaho 463, 198 P.2d 1013; Chambers v. McCollum, 47 Idaho 74, 272 P. 707.

The trial judge was correct in his conclusion that the complaint failed to state a cause of action and could not be amended so as to state a cause of action. Judgment in each case is affirmed. Costs to respondents.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.