Agnes E. Tiernan, Plaintiff-Appellant, v. East Shore Newspapers, Inc., and P. H. Wire, Defendants-Appellees.

Term No. 53–O–17.

Opinion filed December 23, 1953. Released for publication February 5, 1954.

LOUIS BEASLEY, of East St. Louis, for appellant.

POPE & DRIEMEYER, of East St. Louis, for appellees; FRANK M. RAIN, of East St. Louis, of counsel.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from an order and judgment of the circuit court of St. Clair county, entered at the

close of appellant, Agnes E. Tiernan's case, directing a jury to find appellees, East Shore Newspapers, Inc., a corporation, and P. H. Wire, not guilty.

The action was filed against the newspaper publishing company and the general manager (hereinafter referred to as defendants), charging that defendants were guilty of a libel in that the newspaper published by defendant, East Shore Newspapers, Inc., carried in the edition of April 4, 1948, a certain article (apparently originating as a letter or communication) concerning plaintiff, which contained the following language:

"Mrs. Tiernan bases her claims of being qualified for office of county auditor because she kept the books and records of her late father P. J. Soucy. His estate has never been closed and at the present time there are approximately $50,000 in debts with a great deal of property in the hands of the heirs. Why don't they close the estate and pay the bills—she kept the books for her father's business? Why doesn't she give the public more information about her bookkeeping experience? Why not be honest Mr. or Mrs. Voter, and vote the way your heart and conscience tells you and not the way they tell you to, and remember don't do something you may be sorry for later on.

Sincerely<br>Disgusted Voter."

It was the contention of the plaintiff that the publication was libelous *per se*.

On the trial of the case, which was had before a jury, the plaintiff sought to introduce evidence of various witnesses who had read the article as to what such witnesses understood the meaning of the article to be, and the court sustained objections to such proof, and also sustained objections to an offer of proof of evidence of this character. It was shown by the evidence that the estate of plaintiff's father was being administered

by the Public Administrator, and not by plaintiff; and that plaintiff had made no contention that she was qualified for the office of county auditor because she had kept the books and records of her late father. It was also disclosed that the estate of plaintiff's father had not been closed and that an indebtedness of the character referred to in the article apparently existed as to the estate. The evidence also showed that the defendant, P. H. Wire, the general manager, had no prior knowledge of the publication and did not contribute to nor participate in it.

Defendant filed an answer denying that the publication was false, defamatory, scandalous, or malicious, and also filed answers in the nature of justification, on the ground that matters set forth in the letter were true, and published with good motives and for justifiable ends. It is the contention of defendants that fair comments on matters of public interest are not defamatory, particularly since plaintiff held the public office of county auditor by appointment at the time of the alleged libelous publication, and had announced her candidacy for the nomination for the succeeding years, and was conducting an active campaign. She had been disseminating information to the public in an attempt to obtain wide public support. It is contended that under such circumstances she invited public criticism, and everyone became entitled to free discussion of her past activities, character, background, and fitness for office. It is asserted that plaintiff's rights of privacy which might have been violated had she not been a candidate for public office, could under such circumstances be invaded, and she became a legitimate subject of such comment and criticism as was properly intended to further public welfare.

■■ The basic question before this court on appeal is whether the publication referred to is libelous *per se*. The determination of this issue is a question

of law for the court (1870 Constitution of Illinois, Article 2, Section 4; *Ogren v. Rockford Star Printing Co.*, 288 Ill. 405, 417; *Dilling v. Illinois Publishing & Printing Co.*, 340 Ill. App. 303, 307; *Kulesza v. Chicago Daily News, Inc.*, 311 Ill. App. 117, 123). As the court stated in the case of *Dilling v. Illinois Publishing & Printing Co.*, *supra* (at page 307), " 'One who by his activities and by written or spoken language attempts to influence public opinion in any way is subject to the free and honest criticism of his efforts by members of the public . . . .' Hence defendants' right of fair comment in a matter of public interest was properly presented for determination by their motion to dismiss, and it was unnecessary to plead this right as an affirmative defense."

Our Supreme Court has determined that when anyone becomes a candidate for public office, which is conferred by the vote of the people, he is considered as putting his character in issue insofar as it may respect his fitness and qualifications for the office, and everyone may freely comment on his conduct and actions. His acts may be canvassed and his conduct boldly censured (*Ogren v. Rockford Star Printing Co.*, *supra*, at page 417).

In testing the libelous character of such commentary the courts have consistently determined that comments or criticisms are not libelous however severe in their terms, unless they are written maliciously (*Kulesza v. Chicago Daily News, Inc.*, *supra*, at page 123). The alleged slanderous words when susceptible of such interpretation will receive an innocent construction by interpretation, and cannot by innuendo, be extended beyond a reasonable construction (*Creitz v. Bennett*, 273 Ill. App. 88).

A number of cases have given considerable attention to criticisms substantially similar in nature and which have been potentially more derogatory in

nature, such as statements in a campaign for sheriff to the effect. "It is no wonder that these crooks are for him and boast that they will run the county for the next four years." The court stated in connection with such matters (*Davis v. Ferguson,* 246 Ill. App. 318, 327), "It may be conceded that the publications do not charge appellant with the commission of any crime, nor with the expression of principles subversive of government. . . . [P. 331.] To say that appellant had done nothing in the enforcement of law, . . . is not libelous *per se.* . . . It was not libelous *per se* to charge that thieves, burglars, bank robbers, . . . , were supporting appellant for sheriff and boasting that they would run said county for the next four years, because the law will presume that their support was induced wholly by their preference for appellant . . . and . . . may refer entirely to politics . . . , and does not tend to show any criminal connection . . . or impugn his honesty or integrity. . . ." To make such publication libelous *per se,* the court indicated, " 'The conduct charged must be of such a nature as to reflect upon the character and integrity of the plaintiff and to subject him to a loss of public confidence and respect; and a writing, although charging wrongful conduct or dereliction of duty, is not libelous *per se,* within the meaning of the rule, unless it imputes a dishonest or fraudulent motive or interest.' " Testing the present publication by such cases it could not fairly be said that there was any charge of dishonesty in the publication referred to. Certainly it is difficult to sustain any theory upon which the publication could be deemed as libelous *per se* since nothing specifically is charged in the language contained in the communication which comes within the definition of such libels.

Under similar circumstances the courts of this State have, likewise, pointed out that political leaders are

subject to criticism and ridicule which is not taken seriously by the reading public. There is no charge in the publication that plaintiff performed an act or omitted any duty which would render her liable to criminal prosecution (*McLean v. Caverne*, 175 Ill. App. 273). There was a charge that she kept books for her father, which plaintiff admitted; and that there were over $50,000 in claims filed against her father's estate, which plaintiff admitted.

 Since the publication was not libelous *per se* plaintiff had the burden of proving malice, falsity, and special damages, in order to justify submitting the case to the jury. The record discloses that she failed to show that there was any malice, and did not plead, nor submit any evidence of special damages. As stated by the court in *Campbell v. Morris*, 224 Ill. App. 569, 571, "Unless the language used is libelous *per se*, a plaintiff must aver in his declaration that special damages have resulted, stating what they are and prove it on the trial. It is not sufficient to allege generally, that he was damaged."

 Excluding the evidence of witnesses as to what they understood about a publication was proper. As stated in *Ogren v. Rockford Star Printing Co.*, *supra* (at page 413), "Where the words are ambiguous or equivocal in meaning, the question of the meaning to be ascribed to them is for the jury, although the question as to whether or not any particular meaning is libelous is for the court. . . . Plaintiff offered witnesses to prove that by the language of the articles they understood the words in question to be spoken of and concerning plaintiff, but on objection the court refused to admit the evidence. . . . where the language is clear and unambiguous, as it is in this case, . . . no such evidence is admissible for plaintiff in the first instance, but if the defendant disputes the fact and offers evidence to prove it . . . then it would

be proper for plaintiff to offer proof on the question in rebuttal. No such evidence was given for the defendant and we hold that the court did not err in this particular."

█ As has been observed by other specialists in the field of the Law of Libel and Slander, a trial would result in a war of witnesses, if innuendo could be proved by witnesses, with each side declaring the words were to be differently understood. The proposed evidence as to what the witnesses understood the language to mean was properly rejected by the trial court.

█ Obviously, on the record before us, no liability was shown as to defendant, P. H. Wire, under the precedent of the *Kulesza v. Chicago Daily News* case, *supra*, but in view of the fact that the court properly sustained the motion for directed verdict and entered judgment for both defendants, it is not necessary that we treat this subject further in this opinion.

The judgment of the circuit court of St. Clair county was obviously proper and will, therefore, be affirmed.

*Judgment affirmed.*

SCHEINEMAN, P. J. and BARDENS, J., concur.