275 P.2d 663

Laura S. GOUGH and A. C. Gough, wife
and husband, Plaintiffs-Appellants,

v.

TRIBUNE–JOURNAL COMPANY, Herb
Poynter and John McMahan, Defend-
ants–Respondents.

No. 8147.

Supreme Court of Idaho.

Oct. 20, 1954.

Anderson & Anderson, Pocatello, for appellants.

Merrill & Merrill, Pocatello, for respondent Tribune-Journal Co.

Bistline & Bistline, Pocatello, for respondent Poynter.

Zener & Peterson, Pocatello, for respondent McMahan.

TAYLOR, Justice.

Plaintiffs (appellants) allege their marital relationship; that the plaintiff Laura S. Gough was a duly elected, qualified and acting county commissioner of Bannock County; "that on the 5th day of March, 1952, the defendants maliciously composed and published of and concerning the plaintiff, Laura S. Gough in said Idaho State Journal, the following false and defamatory matter to-wit: Poynter and McMahan tell reasons behind commissioner recall move. Herb Poynter, chairman, and John McMahan, secretary-treasurer of the committee to recall County Commissioners George Allen and Laura Gough, issued a letter Wednesday to taxpayers and voters of Bannock County in which they outlined their complaints. Here is the letter in full:

" 'To the Taxpayers and voters of Bannock County:

" 'We, the undersigned, wish to have a few moments of your time to try and explain why the recall movement was started.

" 'As individuals we attended the public reading of the proposed budget of Bannock County. This budget was for $956,753. Two of the Commissioners walked out before we could get any definite reason for such a proposed budget. Later they passed a budget for $828,589. This is $128,162 less than proposed, but still $57,000 higher than last year's. The commissioners explanation for this cut was that a "mistake" had been found. But, we feel this "mistake" was found because of the opposition we put forth.

" 'The Commissioners economized by giving a $10-per month increase in wages to a group of underpaid employees after promising a 10 per cent increase.

" 'The $1500 for a road superintendent and $1500 for a construction foreman were left in the budget. In the past each commissioner, with the aid of the county engineer, looked after his own district. Do you feel this added expense is necessary?

" 'The $2500 for extra attorney fees also was left in the budget. We have a prosecuting attorney and an assistant attorney to handle all county legal matters. These men are qualified and willing to perform any duties required of them. At the public reading of the proposed budget we asked Commissioners Gough and Allen if our prosecuting attorney had been asked

to defend Bannock County in the Higgins case before Mr. Walter Anderson was hired. They refused to answer.

" 'The $10,000 for remodeling the old General Hospital was also left in the budget. We asked if bids had been received for this work. We wanted to know just how they arrived at this sum. The only answer was a statement from Commissioner Allen that he didn't have to answer and that this meeting was not a Court. When this work is started and it is found the money allotted isn't sufficient, aren't we taxpayers going to have to dig up more? Each and every one must realize it will cost several times $10,000 to remodel the old general hospital for office space. Then, there will be architect fees. This will be 6 per cent of the cost of construction. We will have janitor service, heat, water, lights, etc., for another old building. Let's look to the future and plan new buildings —not remodel old ones. Let's be contented with what we have until we can build a new court house.

" 'The nurses' home and the frame house can be sold. Let's get them on the tax rolls.

" 'A bonded purchasing agent is a must for Bannock County. His salary and thousands of dollars can be saved Bannock County through competitive bids.

" 'The voters of Bannock County should have the services of three commissioners. You have two. One commissioner has been voted down about 90 per cent in the last 14 months. Why does this lack of unity or co-operation exist?

" 'The recall movement is the fairest way to reach a settlement on these issues. It will take 2548 signers to get a special election. This special election will cost Bannock County $5400. But, if the commissioners are allowed to remodel the old General Hospital it will cost the taxpayers four or five times this amount.

" 'We feel this unjustifiable spending, and lack of unity and co-operation are not what the taxpayers and voters want.

" 'Let's all work for the best interests of Bannock County.

" 'The petitions will be circulated Thursday. We hope we can have the required number of signers within two weeks.

" 'When the special election is held each of you can vote according to your own convictions—either for or against—but be sure to vote.' "

By way of innuendo plaintiffs further allege:

"That said defendants by making said publication intended to charge the plaintiff, Laura S. Gough, who was a member of the Board of County Commissioners, with the offense of failing to hold a public meeting to discuss the budget as required by law and intended then and there by said publication to charge the plaintiff, Laura S. Gough

with dishonesty by insinuation and innuendo in that said defendants intended to and did charge the plaintiff Laura S. Gough with being guilty of falsehood in giving a ten dollars per month increase in wages to a group of allegedly underpaid employees after promising a ten per cent increase. Said defendants did then and there intend to and did charge the plaintiff, Laura S. Gough with using bad faith in making up said budget in connection with the item of $1500 for a construction foreman of Highways and in connection with the item of $2500.00 for extra attorneys fees."

In a "second count" plaintiffs allege in substance, "that the plaintiff Laura S. Gough ran for the nomination on the Republican ticket, but was defeated by reason of said false, malicious and defamatory publication"; that she could have been re-elected if the publication had not been made; and that by reason thereof she was deprived of the honor, fruits and enjoyment of the office.

Defendants' demurrers to the complaint were overruled by the district judge to whom the cause was first referred. Then, after defendants had filed their answers, when the cause came on for trial on the merits before Judge Henry S. Martin, to whom the case was later referred, the defendants objected to the introduction of any evidence on the ground that the complaint failed to state a cause of action and moved that the cause be dismissed. After hearing the parties, the court sustained the objection and dismissed the case. This is assigned as error, appellants contending that Judge Martin had no authority to review the action of the former judge in overruling the demurrers, and "after the issues were formed the court was without authority to then dismiss the action at that stage of the proceedings." These assignments are not supported by any argument or authorities in the brief and we will not consider them further. Johnson v. Bennion, 70 Idaho 33, 211 P.2d 148; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Griffin v. Opinion Pub. Co., 114 Mont. 502, 138 P.2d 580.

The other assignments raise the question of the sufficiency of the complaint to state a cause of action. For the most part the propositions urged in support of the complaint were decided adversely to the appellants in the case of Gough v. Tribune-Journal Co., 73 Idaho 173, 249 P.2d 192. The publication here complained of arose out of the same transaction which gave rise to the publication complained of in the former case. In that case the publication purported to be a report of what transpired at a public county budget hearing. Here the publication purports to be a letter addressed to the electors of Bannock County by the two individual defendants, apparently participants in the budget hearing. The contention again made in this case that

508

the article charges the plaintiff Laura S. Gough "with the offense of failing to hold a public meeting to discuss the budget as required by law", was disposed of in the former opinion. Likewise both articles refer to complaints made to the commissioners about the budget items of $1500 for construction foreman, and $2500 for extra attorney's fees. The only new matter referred to in the innuendo in this case is that the article ·charges the plaintiff with being guilty of a falsehood in promising a ten percent increase in wages to a group of underpaid employees and then giving them a $10 per month increase.

In · determining the defamatory character of a publication the article must be read and construed as a whole; the words used are to be given their common and usually accepted meaning and are to be read and interpreted as they would be read and understood by the persons to whom they are published. Gough v. Tribune-Journal Co., 73 Idaho 173, 249 P.2d 192; Wimmer v. Oklahoma Pub. Co., 151 Okl. 123, 1 P.2d 671; Campbell v. Post Pub. Co., 94 Mont. 12, 20 P.2d 1063; Estill v. Hearst Pub. Co., 7 Cir., 186 F.2d 1017; Spanel v. Pegler, 7 Cir., 160 F.2d 619, 171 A.L.R. 699; Browder v. Cook, D.C.I., 59 F.Supp. 225.

If the language used is plain and unambiguous, it is a question of law for the court to determine whether it is libelous per se, and if not libelous per se it cannot be made so by innuendo. Innuendo is necessary and permissible only where the language of the alleged defamation is. vague or ambiguous, and explanatory allegations are required to show the intent of the defendant, and the sense in which the article is understood by its readers. Arizona Pub. Co. v. Harris, 20 Ariz. 446, 181 P. 373; Vedovi v. Watson & Taylor, 104 Cal.App. 80, 285 P. 418; Mortensen v. Los Angeles Examiner, 112 Cal.App. 194, 296 P. 927; Wimmer v. Oklahoma Pub. Co., 151 Okla. 123, 1 P.2d 671; Campbell v. Post Pub. Co., 94 Mont. 12, 20 P.2d 1063; Babcock v. McClatchy Newspapers, 82 Cal.App.2d 528, 186 P.2d 737; Dilling v. Illinois Pub. & P. Co., 340 Ill.App. 303, 91 N.E.2d 635; Tiernan v. East Shore Newspapers, 1 Ill.App.2d 150, 116 N.E.2d 896, 897; Spanel v. Pegler, 7 Cir., 160 F.2d 619, 171 A.L.R. 699; Estill v. Hearst Pub. Co., 7 Cir., 186 F.2d 1017; Schy v. Hearst Pub. Co., 7 Cir., 205 F.2d 750; Sweeney v. Capital News Pub. Co., D.C. Idaho, 37 F.Supp. 355.

The language involved here is. plain and unambiguous, and cannot be enlarged to include the innuendos set out in the complaint; nor do we think it would be understood by the readers in the sense alleged. Read as a whole it appears to be nothing more than "fair comment" and criticism of the public acts of public officials.

Moreover, both the occasion and the publishers appear to be conditionally privileged. Dwyer v. Libert, 30 Idaho 576,

167 P. 651, Ann.Cas.1918B, 973. The individual defendants purport to be residents and taxpayers of Bannock County having a right to participate in the public budget hearing, and to comment on and criticize the budget proposed by the commissioners. § 31-1605 I.C. It was also their right to propose and promote the recall of one or more of the commissioners. Ch. 17, Title 34, I.C. As electors and taxpayers they had an interest in the county budget in common with all other electors and taxpayers of the county. The communication was addressed to those others sharing the common interest, and who were privileged to act thereon if it were true.

"Occasions conditionally privileged afford a protection based upon a public policy which recognizes that it is essential that true information shall be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons, or certain interests of the public. In order that such information may be freely given, it is necessary to afford protection against liability for misinformation given in an honest and reasonable effort to protect or advance the interest in question." 3 A.L.I., Restatement of the Law of Torts, page 240.

"§ 593. One who publishes false and defamatory matter of another is not liable therefor if

"(a) it is published upon a conditionally privileged occasion and

"(b) the occasion is not abused.

"§ 594. An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

"(a) facts exist which affect a sufficiently important interest of the publisher, and

"(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

"§ 596. An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.

"§ 598. An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

"(a) facts exist which affect a sufficiently important public interest, and

"(b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true.

510

"§ 606. (1) Criticism of so much of another's activities as are matters of public concern is privileged if the criticism, although defamatory, .

"(a) is upon,

"(i) a true or privileged statement of fact, or

"(ii) upon facts otherwise known or available to the recipient as a member of the public, and

"(b) represents the actual opinion of the critic, and

"(c) is not made solely for the purpose of causing harm to the other.

"§ 607. (1) The privilege of criticism, stated in § 606, includes a privilege to criticise the public conduct of all officers or employees of the United States, a State or Territory thereof, or a municipal corporation of a State or Territory, and all candidates for such office and applicants for such employment in so far as the conduct of such officer, employee or candidate is a matter of public concern to those to whom the critcism is published." 3 A.L.I., Restatement of the Law of Torts.

■■■■ Where the occasion is conditionally privileged the publisher is not liable even though the publication be defamatory, unless he has abused the occasion. See 3 A.L.I., Restatement of the Law of Torts, §§ 599 to 605 inclusive.

Such an abuse would be the publication of false statements of fact, known to be false, or without reasonable grounds for belief in the truth thereof; or where the publication is not made in good faith for the purpose of protecting the interest for which the privilege is extended, but is maliciously made for the purpose of injuring the person concerning whom it is made. Since the allegations of the complaint show that the occasion was conditionally privileged, it was incumbent upon the plaintiff to allege facts which would support proof that the privilege was abused. 53 C.J.S., Libel and Slander, § 178; Fedderwitz v. Lamb, 195 Ga. 691, 25 S.E.2d 414. While the complaint characterizes the publication as "false and malicious", the allegation appears to be a mere conclusion. Locke v. Mitchell, 7 Cal.2d 599, 61 P.2d 922; Babcock v. McClatchy Newspapers, 82 Cal.App.2d 528, 186 P.2d 737. Plaintiffs do not say the article contains false statements of fact, or that any statements of fact therein were known by the defendants to be false, or were made by the defendants without any reasonable grounds for believe in their truth, or that the defendants were actuated by a malicious motive to injure the plaintiffs rather than to promote their own, or the public, interest. In such a case malice cannot be implied.

"In other words, there can be no legal malice in contemplation of law where the thing done is lawful and

the means employed are lawful. Courts must judge the intent a man has in doing an act by the means he employs and the thing to be accomplished, and if they all be lawful, courts cannot impute malicious or unlawful motives to the actor." Barton v. Rogers, 21 Idaho 609, at page 618, 123 P. 478, at page 480, 40 L.R.A.,N.S., 681.

■ The defendant newspaper, being the appropriate and customary medium for the transmittal of communications such as that involved, is privileged in the same manner and to the same extent as the individual defendants. Gough v. Tribune-Journal Co., 73 Idaho 173, 249 P.2d 192; Rogers v. Courier Post Co., 2 N.J. 393, 66 A.2d 869; Caldwell v. Crowell-Collier Pub. Co., 5 Cir., 161 F.2d 333, certiorari denied 332 U.S. 766, 68 S.Ct. 74, 92 L.Ed. 351; 53 C.J.S., Libel and Slander, §§ 121, 123, 131, 132 and 134.

■ The same reasoning applies to the allegations of the second count. It appearing that the defendants did and said only that which they were privileged to do and say, they could not be held for the loss by the plaintiff of the ensuing election alleged to have resulted therefrom. In fact, it was also their privilege to accomplish the defeat of the plaintiff by lawful means. Egan v. Dotson, 36 S.D. 459, 155 N.W. 783. Moreover, the allegations that

the primary election was lost as a result of the publication appears to be too remote and speculative to support a judgment for the plaintiffs. Lynch v. Republic Pub. Co., 40 Wash.2d 379, 243 P.2d 636; Field v. Colson, 93 Ky. 347, 20 S.W. 264; Taylor v. Moseley, 170 Ky. 592, 186 S.W. 634; Ferguson v. Washburn, Tex.Civ.App., 4 S.W.2d 574; Otero v. Ewing, 162 La. 453, 110 So. 648, 56 A.L.R. 249.

The trial judge was correct in holding the complaint insufficient. Jenness v. Co-op. Pub. Co., 36 Idaho 697, 213 P. 351; Locke v. Mitchell, 7 Cal.2d 599, 61 P.2d 922; Babcock v. McClatchy Newspapers, 82 Cal.App.2d 528, 186 P.2d 737; Griffin v. Opinion Pub. Co., 114 Mont. 502, 138 P.2d 580; Freeman v. Mills, 97 Cal.App. 2d 161, 217 P.2d 687; Westropp v. E. W. Scripps Co., 148 Ohio St. 365, 74 N.E.2d 340; Tiernan v. East Shore Newspapers, 1 Ill.App.2d 150, 116 N.E.2d 897; Bailey v. Charleston Mail Ass'n, 126 W.Va. 292, 27 S.E.2d 837, 150 A.L.R. 358 and Annotation; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. 412 and Annotation. See also, Howard v. Southern Cal. Associated Newspapers, 95 Cal.App.2d 580, 213 P.2d 399 (a recall case).

Judgment is affirmed. Costs to respondents.

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.